SPUR DISTRIBUTING COMPANY, COMPLAINANT, APPELLEE, *v.* R. C. LINDSEY, COUNTY COURT CLERK, DEFENDANT, APPELLANT.

(*Nashville,* December Term, 1932.)

Opinion filed July 19, 1933.

MALONE & WADE, for complainant, appellee.

ROY H. BEELER, Attorney-General, J. M. GARDENHIRE, Assistant Attorney-General, and HORACE OSMENT, for defendant, appellant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a suit brought to recover back a privilege tax paid under Item 62, Chapter 13, Acts of Tennessee, second extra session of 1931, reading as follows:

"ITEM 62—OIL DEPOTS AND OIL WAGONS WHOLESALE.

"The term 'Oil Depot' as used herein shall be under-

stood to mean a place within this State where petroleum products and/or substitutes therefor come to rest within this State after movement in interstate commerce or where such products are kept for sale after manufacture or processing in this State, in quantities equal to or greater than thirty-one gallons liquid measure, and, the transfer of such products from a licensed 'Oil Depot' to another location from which wholesale sales are made shall make such location a separate and distinct Oil Depot.

"(a) Each person having or maintaining an Oil Depot as above defined, within this State, shall pay a special privilege tax for such place or depot . . . as follows:"

Here follow paragraphs fixing tax amounts, graduated according to quantities, from a minimum of thirty-one (31) gallons up.

Complainant maintains an "Oil Depot," from which it sells at retail, where the products "come to rest within this State after movement in interstate commerce," and insists, sustained by the Chancellor, that (1) it is protected from tax on these products, which it receives only by interstate shipments, by the Commerce Clause of the Federal Constitution (Art. I, Sec. 8, Sub-sec. 3), and that (2) it is discriminated against, in violation of the Fourteenth Amendment, in that like businesses confined to State produced oil products are not subjected to the same tax.

By item 62, above set out, the "Oil Depot" taxed is either (1) a place where those products are stored in this State after coming in by interstate shipment, or (2) a place where these products are kept for sale after manufacture or processing locally,—the minimum limitation

of thirty-one (31) gallons applying to both classifications.
No discrimination appears here against products shipped
into the State. The Act further provides that, if and
when a transfer takes place from one of the afore-
described Oil Depots to another location from which
wholesale sales are made, then this transfer storage sta-
tion shall be known and similarly taxed as a separate
and distinct Oil Depot. These provisions all apply alike
to products originating either locally, or beyond the
State, without discrimination. The last proviso is con-
sistent with the main purpose evinced, which is to lay
a privilege tax on the business of maintaining storage
depots within the State in which oil products are held
in large quantities for sale, and, also, with a further
purpose, which seems apparent, namely, to supplement
and aid the administration of the six cents-gallon tax
(Code Secs. 1127-1128, amended by Chap. 40, Acts 1931).
This six-cents tax is collected only on withdrawals of
gasoline from places of original storage within the State.
Persons maintaining such places of original storage are
the payers of the six-cents tax. The imposition of a privi-
lege tax on the maintenance of places of original storage
has a natural tendency to reduce the number of such
places, and insure a public record of them; thus limiting
or reducing the number of taxpayers liable for the gallon-
age tax and identifying them. This facilitates the col-
lection of the gallonage tax, and is, we conceive, what the
Attorney-General had in mind in his opinion, copied in
the original bill, when he said that the legislature, by the
imposition of this tax, "intended to remedy the evil of
bootlegging petroleum products in this state." How-
ever, while the tax now before us may have this practical
effect of reducing the number of importers of gasoline.

it does not reduce the total value of interstate shipments, and this effect of the legislation is not, therefore, discriminatory against interstate commerce. (If any gasoline is produced in Tennessee in commercial quantities the fact is not apparent, either from the record or within common knowledge.)

In the view indicated, the Act is to be construed as if it had in terms fixed a tax on all oil depots conducting the business of storing such products in this State for sale, without reference to, or regardless of, the point of original production, and in this view, quite obviously, no discrimination is made against products because shipped here interstate.

■ It has been long settled that gasoline, upon being unloaded and stored, ceases to be a subject of transportation in interstate commerce and loses its immunity as such from State taxation. *General Oil Co.* v. *Crain,* 209 U. S., 211, 52 L. Ed., 754; *Bacon* v. *Illinois,* 227 U. S., 504, 57 L. Ed., 615; *Susquehanna Coal Co.* v. *South Amboy,* 228 U. S., 665, 669, 57 L. Ed., 1015; *Hart Refineries* v. *Harmon,* 278 U. S., 499, 73 L. Ed., 475; *Gregg Dyeing Co.* v. *Query,* 286 U. S., 472, 76 L. Ed., 1232. And, in the recent case of *Nashville, C. & St. L. R. Co.* v. *Wallace,* decided February 6, 1933, reported in U. S. Sup. Ct., Advance Sheets, pages 444, et sequi, the U. S. Supreme Court, affirming the decree of this Court, not only re-affirmed the holdings above noted, but went further and held that, "The fact that the oil was, in ordinary course of appellant's business, later withdrawn from storage for use, some within and some without the State, part of it thus becoming again the subject of interstate transportation, did not affect the power of the State to tax it all before that transportation commenced."

██ A theory advanced, adopted by the Chancellor, was that since other retail filling stations in Nashville are not required to pay this tax, its exaction of complainant constitutes an unlawful discrimination in administration. To this we do not concur. These other retail stations would be liable for the tax if they operated ''Oil Depots,'' as defined in the Act. The reason they are not required to pay is because they purchase their gas from ''Oil Depots'' within the State that have paid the tax. If complainant purchased its gas from such ''Oil Depots'' it would not have to pay this tax, because it could not then be classified as an ''Oil Depot.'' As before said, this tax is exacted of each person receiving and storing gas, whether coming in by interstate transportation, or direct from the refiner or processor in Tennessee. So that a tax is imposed on all gas stored in the State. When purchased by a retail filling station from a local ''Oil Depot'' the tax has already been paid, and the purchaser should not have to pay it again. When complainant acquires gas in the manner stated hereinabove, the ''Oil Depot'' tax has not been paid. If complainant can store and sell gas without paying this tax, the result would be a discrimination against other persons operating local ''Oil Depots'' who are required to pay the tax.

██ It is as necessary that the business of storing gasoline be licensed and regulated as any other business; first, as a police measure to protect the safety of the citizens; and, second, to better enable the authorities to check the quantity of gas brought into the State. Without this regulation every person who uses any appreciable quantity of gas could provide a tank and have it filled with gas transported from the oil fields of Kentucky in a truck. In this situation it is perceivable that in many in-

stances the State would be unable to collect the six-cents tax for road construction above cited. By making the storing of gasoline a privilege, this illegal practice can be in a large measure obviated. Many persons would not store gas if they had to pay this tax and procure a license. The result, as hereinbefore shown, would be fewer "Oil Depots," thus better enabling the State to keep informed as to the quantity of gas coming within her borders. Evidently this was the view entertained by the legislature, and we consider the classification a reasonable one that is in no sense discriminatory. In theory, at least, these "Oil Depots" pass this tax on to their customers (retail filling stations); complainant imposes it upon its customers (retail purchasers); so that, in reality, the burden at last falls on the consumer, as is usually the case in matters of taxation, and no unjust discrimination is suffered by operators of "Oil Depots."

Complainant also insisted, overruled by the Chancellor, that the Act applies alone to wholesale sales, but we agree with the Chancellor that this restriction, by the language of the Act, applies only to those depots to which the products have been in turn transferred from the original storage depots, this being a classification within the discretion of the legislature, affecting only products which have once been subjected to this privilege tax burden at their original storage source.

The decree must be reversed and the bill dismissed.