## George H. Sheppard, Comptroller, et al. v. Glenn W. Musser.

No. 7051.   Decided March 13, 1936.
Rehearing overruled April 8, 1936.
(92 S. W., 2d Series, 219.)

*William McGraw,* Attorney General, *Pat M. Neff, Jr., William C. Davis, John W. Pope, Jr., T. F. Morrow,* Assistants Attorney General, *Will R. Parker,* Criminal District Attorney of Tarrant County, and *Cecil C. Rotsch,* Assistant Criminal District Attorney of Tarrant County, for plaintiff in error.

When cigarettes are delivered to the purchasers and customers of defendant in error and the purchase money has been paid to him, his agents and salesmen, they cease to be in the channels of interstate commerce and become subject to the tax levied upon the use or consumption of such cigarettes by Section 2 of the Cigarette Tax Law of Texas, and such tax is not in contravention of Article 1, Section 8, Clause 3 of the Constitution of the United States as being in interference with interstate commerce, neither is it discrimatory, but evidences only the legislative purpose to levy a tax upon the first sale, use or consumption of cigarettes in Texas, however acquired. Bowman v. Continental Oil Co., 256 U. S., 642, 41 Sup. Ct., 606, 65 L. Ed., 1139; Gregg Dyeing Co. v. Query, 286 U. S., 472, 52 Sup. Ct., 631, 76 L. Ed., 1232; Gibbons v. Ogden, 9 Wheat., 1, 6 L. Ed., 23.

*Samuels, Foster, Brown & McGee,* and *Carl Goerte,* all of Fort Worth, for defendant in error.

The transaction did not lose its interstate character when the cigarettes ordered by the purchaser and shipped to him from another state were delivered into the hands of the customers and therefore were not liable to the payment of the cigarette tax. Station WBT v. Paulnot, 46 Fed. (2d) 671; Hammer v. Dagenhart, 247 U. S., 251, 62 L. Ed., 1101, 38 Sup. Ct., 529; State v. Lowry, 166 Ind., 372, 77 N. E., 728; Stubbs v. People, 44 Col., 414, 90 Pac., 1114.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the court.

The defendant in error, Glenn W. Musser, who will be referred to herein as plaintiff, brought this action in the District Court of Tarrant County against George H. Sheppard, in his capacity as Comptroller of Public Accounts of the State of Texas, and certain of his deputies, and against the District

Attorney of Tarrant County. These parties will be designated herein as defendants. The purpose of the action was to obtain an injunction against the defendants to restrain them in the collection of taxes under what is known as the Cigarette Tax Law, which became effective May 11, 1935. See Acts Regular Session, Chapter 241, page 575. A temporary injunction was issued by the district court, which injunction was in part dissolved by the Court of Civil Appeals and in part sustained. 89 S. W. (2d) 222. Judge Martin filed a dissenting opinion.

As presented here, it may be said that plaintiff's action is predicated upon the claim that he is engaged in interstate commerce, and that the various acts of the defendants in their efforts to enforce the provisions of the Cigarette Tax Law are unlawful and should be restrained, because they amount to an unjustified restraint upon and an interference with interstate commerce. As briefed and submitted in this court, the case has been reduced to practically one point, and for that reason we shall not make an extended statement with reference to the pleadings or the facts.

Plaintiff Musser is a citizen of the State of Texas and resides in the City of Ft. Worth, Tarrant County. He is doing business under the name of the Texas Tobacco Company. He employs a large number of salesmen, whose business it is to solicit orders for and make sales of cigarettes. Plaintiff also employs several distributing agents, who reside in some of the leading cities of the State. In conducting his business, plaintiff orders large quantities of cigarettes from several of the leading manufacturers in the United States, whose places of business are located in states other than Texas. These cigarettes before being applied to orders are kept in a warehouse or storeroom located at Ardmore, in the State of Oklahoma, a short distance from the Texas line. This warehouse is in charge of an employee of plaintiff, who is a citizen of the State of Texas. The various salesmen take orders in different parts of the State of Texas for quantities of cigarettes of different makes, the quantities being designated by cartons. Apparently no sales are made of less than one carton. A carton consists of 10 packages and a package contains 20 cigarettes. When orders are taken by salesmen these orders are turned over to the distributing agent and are by him sent to the storeroom at Ardmore, Oklahoma, or they are sometimes sent by the individual salesman direct to Ardmore. When orders reach the warehouse at Ardmore the cartons necessary to fill same are tied together in one package and a sticker showing the names

and locations of the purchasers is put on the packages. In some instances only the address of the purchaser is on the sticker. The various packages are then put into empty cases, which cases have been used in shipping the cigarettes from the factories to Ardmore. A case contains ten thousand cigarettes. The cases are then loaded on the trucks belonging to plaintiff, which trucks make frequent trips from Ardmore to the principal cities of Texas and return. When a truck reaches the City of Ft. Worth, for instance, the cigarettes are taken to the residence of plaintiff, where they are separated and the various packages intended for different purchasers in that city are delivered to the salesman who took the respective orders, and by the salesmen are delivered to the parties who gave the orders. Apparently, a like procedure is followed in other cities, except that the packages are separated and alloted to salesmen at some place other than the residence of plaintiff. Upon delivery by the salesman he collects the purchase price and remittance is made by him to plaintiff, or in some instances to the distributing agent, who in turn remits the money to plaintiff. No sale is completed until delivery has been made and the purchase money paid. The salesmen are instructed to make no delivery until the purchase money is paid, and if it is not paid, the cigarettes are returned to the warehouse at Ardmore. The salesman and the distributing agents are paid a commission upon the sales made, which commissions are not paid until the purchase money is paid to plaintiff at Ft. Worth, Texas. When cigarettes have been delivered and the money paid, plaintiff has nothing further to do with the transaction.

Plaintiff admitted on the hearing that he had adopted this method of doing business in Texas solely for the purpose of claiming the protection of interstate commerce laws, and to evade payment of the taxes under the Cigarette Law of the State.

For the purposes of this decision we shall assume that plaintiff, up to the time he makes delivery of cigarettes to a purchaser and collects the purchase money, is engaged in interstate commerce, but we wish it to be distinctly understood that we are not making such a holding upon the facts. We are merely declining to interfere with the presumed holding of the trial court on the question, and leave it open for determination upon a final hearing upon the merits of the case.

Plaintiff in his petition alleged many acts of interference with himself and his agents in the transaction of his business. On the assumption that he was engaged in interstate commerce

some of the acts complained of were improper. However, upon a hearing there seems to have been but very little, if any, proof offered tending to show interference with plaintiff's business prior to the time cigarettes were delivered to purchasers. The case apparently resolved itself into one controversy, and the briefs and argument of counsel in this court have been confined almost exclusively to that controversy. The real point now at issue here appears to be the contention of plaintiff that the provision of the Cigarette Tax Law of Texas which seeks to impose a tax upon cigarettes, to be paid by the person who makes the first sale thereof in intrastate commerce, unlawfully interferes with his business, when "first sale" is given the meaning which the Legislature has declared it shall have.

The Act in question provides:

" 'First Sale' shall mean and include the first sale or distribution of cigarettes in intrastate commerce, or the first use or consumption of cigarettes within this State."

The provision fixing the taxes is as follows:

"A tax of One Dollar and Fifty Cents ($1.50) per thousand on cigarettes weighing not more than three (3) pounds per thousand and Three Dollars and Sixty Cents ($3.60) per thousand on those weighing more than three (3) pounds per thousand is hereby imposed on all cigarettes used or otherwise disposed of in this State for any purpose whatsoever. The said tax shall be paid only once by the person making the 'first sale' in this State and shall become due and payable as soon as such cigarettes are subject to a first sale in Texas, it being intended to impose the tax as soon as such cigarettes are received by any person in Texas for the purpose of making a 'first sale' of same. No person, however, shall be required to pay a tax on cigarettes brought into this State on or about his person in quantities of forty (40) cigarettes or less when such cigarettes have had the individual packages or the seals thereof broken and when such cigarettes are actually used by said person and not sold or offered for sale. Payment of such tax shall be evidenced by stamps purchased from the Treasurer and securely affixed to each individual package of cigarettes covering the tax thereon as imposed by this Act; provided that such stamps may be purchased and affixed to such individual packages of cigarettes by a manufacturer of cigarettes outside this State, in which case no further payment of tax shall be required.

"Provided, that the tax imposed shall be in lieu of any

other occupation or excise tax imposed by the State or any political subdivision thereof, on cigarettes."

The Court of Civil Appeals in a majority opinion says:

"Accordingly, the majority are of the opinion that, in so far as the restraining order protects appellee and his agents in soliciting bona fide interstate orders, and in his and their lawful possession of goods brought into Texas, under such orders, and in his and their right to deliver such goods, so ordered, to bona fide purchasers, and protecting such purchasers, in the use and consumption thereof, and in their possession, for such purposes, as against the state comptroller, and those acting under him and by his order and direction, same should be affirmed; but that the restraining order, in so far as it seeks to enjoin the district attorney of Tarrant County and his assistants and deputies, should be vacated, by reason of the fact that these respondents are not even threatening to prosecute appellee or his agents.

"The majority are of the further opinion that the state comptroller and those acting under his orders and direction have the lawful right to inspect the goods brought in by appellee or his agents, the premises used by appellee, and the vehicles used for delivery of the goods by him or his agents, and the books and records kept by appellee and his agents, for the purpose of ascertaining what goods are sold in interstate commerce transactions and what goods, if any, are subject to the state tax; and that therefore such officer and officers have the lawful right to exact and collect all taxes on cigarettes not sold and delivered in bona fide interstate transactions, and to confiscate the goods, where refusal to pay such tax is made; and that all officers in this state have the authority to arrest and prosecute any person who has violated, or may hereafter violate, any provisions of the Cigarette Tax Law, but specifically holding that a purchaser, through a bona fide interstate transaction, who buys for his personal use or assumption, or to give away, shall not be molested in his possession in any wise by any officer of this state.

"* * *

"Accordingly, the restraining order issued by the district court in so far as it protects appellee and his agents in soliciting bona fide interstate orders, and in his and their lawful possession of goods brought into Texas, under such orders, and in his and their right to deliver such goods, so ordered, to bona fide purchasers, and protecting such purchasers in the use and consumption of the goods, and in their possession for such

purposes, as against the appellant, state comptroller, and those acting under him and by his orders and directions, is by us affirmed; and in all other respects the restraining order of the district court is dissolved."

The plaintiff is not complaining here as to any of the holdings against him. On the assumption that plaintiff is engaged in interstate commerce until delivery of the cigarettes has been made to the purchaser, it is obvious that the temporary injunction, in so far as it protects plaintiff and his agents, "in soliciting bona fide interstate orders, and in his and their lawful possession of goods brought into Texas, under such orders, and in his and their right to deliver such goods, so ordered, to bona fide purchasers," should not be disturbed, and in this respect the same is to be undisturbed by this opinion until further orders of the trial court.

■ In our opinion, the trial court and the Court of Civil Appeals, in granting and affirming the injunction "protecting such purchasers in the use and consumption of the goods, and in their possession for such purposes, as against the State Comptrolled, and those acting under him and by his orders and directions," unquestionably erred.

In the case of Ex Parte Kimberlin, 126 Texas, 60, 86 S. W. (2d) 717, where the facts were almost identical as they are here, we said:

"We are decidedly of the opinion that even though plaintiff Klugsberg was engaged in interstate commerce, yet when the cigarettes were finally delivered by the salesmen to the respective purchasers and the purchase money was paid to the salesmen, they ceased to be in interstate commerce and became a proper subject for taxation under the provisions of the Cigarette Law. The correct rule is reflected by such cases as Waring v. Mayor, etc., of Mobile, 8 Wall., (75 U. S.) 110, 19 L. Ed., 342, and Fuqua v. Pabst Brewing Co., 90 Texas, 298, 38 S. W., 29, 750, 35 L. R. A., 241. It becomes immaterial to determine here whether the tax after the cigarettes were delivered to the purchasers was to be collected on the sale or on the consumption of same, as this is a matter wholly between the purchaser and the officers of the state. Even if the attempt by the Comptroller and his associates to lay the tax on the· purchaser had an indirect effect upon the business of plaintiff (which we do not find it necessary to decide), this furnishes no ground for injunctive relief on his part. This is not a case of interference with business by reason of willful threats and intimidations, but the alleged interference results from a bona fide effort to

enforce the tax laws of this state; and such acts cannot be held to be such an interference with the business of plaintiff as to justify relief by injunction. It is admitted that when the cigarettes were delivered to the purchaser and the purchase money paid, plaintiff had no further interest in them or in the transaction by which the sale was effected."

This statement was advisedly made, both as to the proposition that when the cigarettes were delivered to the purchaser and the purchase money paid, they ceased to be any longer in interstate commerce, and as to the proposition that "whether the tax after the cigarettes were delivered to the purchaser was to be collected on the sale or on the consumption of same is a matter wholly between the purchaser and the officers of the State." We affirm all that is quoted above as directly applicable to plaintiff and his attempt to obtain injunctive relief on the ground that the efforts of the State officers to collect the taxes from purchasers burdens interstate commerce.

■ Although it is undisputed that when the cigarettes are delivered to the purchaser and the purchase price is paid plaintiff no longer has anything to do with the transaction, yet the burden of his whole argument is that if the purchaser be taxed upon the use or consumption of the cigarettes this will constitute an interference with interstate commerce, in that his business will be greatly impaired. This precise question appears to have been recently answered by the Supreme Court of the United States in the case of A. Magnano Co. v. Hamilton, 292 U. S., 40, 54 Sup. Ct., 599, 78 L. Ed., 1109. The following statement from the opinion reflects the questions presented:

"Appellant assails as invalid a statute of the State of Washington which levies an excise tax of fifteen cents per pound on all butter substitutes sold within the state. Every distributor of such butter substitutes is required to file a duly acknowledged certificate with the Director of Agriculture, containing the name under which the distributor is transacting business within the state and other specified information. Sale of any butter substitute is forbidden until such certificate is furnished. The distributor must render to the Director of Agriculture, on the fifteenth day of each month, a sworn statement of the number of pounds of butter substitutes sold during the preceding calendar month. Section 10 of the act provides that the tax shall not be imposed on butter substitutes when sold for exportation to any other state, territory, or nation; and any payment or the doing of any act which would constitute an unlawful burden upon the sale or distribution of

butter substitutes in violation of the Constitution or laws of the United States is by section 13 excluded from the operation of the act. Violation of any provision of the act is denounced as a gross misdemeanor.

"Appellant is a Washington corporation, and has for many years been engaged in importing and selling 'Nucoa,' a form of oleomargarine. Prior to the passage of the act, it had derived a large annual net profit from sales made within the state. Since then, claiming the tax to be prohibitive, it has made no intrastate sales and no effort to do so. 'Nucoa' is a nutritious and pure article of food, with a well established place in the dietary.

"Suit was brought to enjoin the enforcement of the act, on the ground that it violates the federal Constitution in the following particulars: (1) that the imposition of the tax has the effect of depriving complainant of its property without due process of law and of denying to it the equal protection of the laws, in violation of the Fourteenth Amendment; (2) that the tax is not levied for a public purpose, but for the sole purpose of burdening or prohibiting the manufacture, importation and sale of oleomargarine, in aid of the dairy industry; (3) that the act imposes an unjust and discriminatory burden upon interstate commerce."

Answering the contention made by appellant that the Act imposed an unjust burden upon interstate commerce, the court said:

"The act, considered as a whole, clearly negatives the idea that a burden is imposed upon interstate commerce, as the court below held. The tax is confined to sales within the state, and has no application to sales of oleomargarine to be either imported or exported in interstate commerce."

■ Proceeding to enlarge upon this holding the court answered the contention which plaintiff is making in the present case, towit, that if a tax is laid upon the purchaser of his cigarettes it will interfere with his business, and used this language:

"The point may be conceded that the tax is so excessive that it may or will result in destroying the intrastate business of appellant; but that is precisely the point which was made in the attack upon the validity of the ten per cent tax imposed upon the notes of state banks involved in Veazie Bank v. Fenno, 8 Wall., 533, 548, 19 L. Ed., 482, 487. This court there disposed of it by saying that the courts are without authority to prescribe limitations upon the exercise of the acknowledged powers of the legislative departments."

The court then quoted from various decisions and further said:

"The statute here under review is in form plainly a taxing act, with nothing in its terms to suggest that it was intended to be anything else. It must be construed, and the intent and meaning of the legislature ascertained, from the language of the act, and the words used therein are to be given their ordinary meaning unless the context shows that they are differently used. Child Labor Tax Case (Bailey v. Drexal Furniture Co.) supra, 259 U. S., 36. If the tax imposed had been five cents instead of fifteen cents per pound, no one, probably, would have thought of challenging its constitutionality or of suggesting that under the guise of imposing a tax another and different power had in fact been exercised. If a contrary conclusion were reached in the present case, it could rest upon nothing more that the single premise that the amount of the tax is so excessive that it will bring about the destruction of appellant's business, a premise which, standing alone, this court heretofore has uniformly rejected as furnishing no juridical ground for striking down a taxing act."

■ We reiterate that plaintiff is in no position to raise the question of the validity of the provisions of the law which impose a tax upon the purchaser, regardless of whether the tax is imposed upon the use or the sale of the cigarettes by him. It is perfectly obvious that he is in no position to complain, except on the theory that the imposition of the tax upon the use of the cigarettes by the purchaser constitutes a direct and substantial burden upon interstate commerce, and the decisions in similar cases are uniformly to the effect that a tax upon the use of an article, after coming to rest within the state, is not an unlawful interference with interstate commerce. The following are a few of the leading cases: Wiloil Corporation v. Commonwealth of Pennsylvania, 294 U. S., 169, 55 Sup. Ct., 358, 79 L. Ed., 838; Monator Oil Co. v. Johnson, 292 U. S. 86, 54 Sup. Ct., 575, 76 L. Ed., 1141; Nashville C. & St. L. Ry. Co. v. Wallace, 288 U. S., 249, 53 Sup. Ct., 345, 77 L. Ed., 730; Edelman v. Boeing Air Transport, 289 U. S., 249, 53 Sup. Ct., 591, 77 L. Ed., 1155. An exhaustive review of decisions is found in the case of Commonwealth v. Dixie Greyhound Lines, 255 Ky., 111, 72 S. W. (2d) 1032. See also the case of Spur Distributing Co. v. Lindsey, 166 Tenn., 424, 62 S. W. (2d) 54. The language of the Supreme Court in the case of Railway Company v. Wallace, supra, is significant:

"The power to tax property, the sum of all the rights and

powers incident to ownership, necessarily includes the power to tax its constituent elements. See Bromley v. McCaughn, 280 U. S., 124, 136-138, 74 L. Ed., 226, 229, 230, 50 S. Ct., 46. Hence, there can be no valid objection to the taxation of the exercise of any right or power incident to appellant's ownership of the gasoline, which falls short of a tax directly imposed on its use *in interstate commerce*, deemed forbidden in Helson v. Kentucky, 279 U. S., 245, 73 L. Ed., 683, 49 S. Ct., 279, supra. Here the tax is imposed on the successive exercise of two of those powers, the storage and withdrawal from storage of the gasoline. Both powers are completely exercised before use of the gasoline in interstate commerce begins. The tax imposed upon their exercise is therefore not one imposed on the use of the gasoline *as an instrument of commerce* and the burden of it is too indirect and remote from the function of interstate commerce itself to trangress constitutional limitations." (Emphasis ours).

■ We here take occasion to say that all opinions approved by the Supreme Court, even although prepared by a Commissioner, are the opinions of the Court and should be observed and followed as such. We also feel constrained to observe that in our opinion the bond given by plaintiff in this case is grossly inadequate, in view of the fact that the record shows that the State is losing thousands of dollars in taxes every month.

The judgments of the trial court and of the Court of Civil Appeals, in so far as said injunction attempts to "protect purchasers in the use and consumption of cigarettes sold to them by plaintiff, and in their possession for such purposes, as against the State Comptroller and those acting under him and by his orders and directions," are reversed and the injunction in that respect is here and now peremptorily dissolved. The judgment of the Court of Civil Appeals in all other respects is affirmed.

Opinion adopted by the Supreme Court March 13, 1936.

Rehearing overruled April 8, 1936.