BUCHANAN *et al. v.* CARSON, COMMISSIONER OF FINANCE, ETC.

(*Nashville*, December Term, 1948.)

Opinion filed March 11, 1949.

Taber, Chambliss, Swafford & Claunch, of Chattanooga, for appellants.

Roy H. Beeler, Atty. Gen., William F. Barry, Sol. Gen., and Harry Phillips, Asst. Atty Gen., for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

This suit was brought to recover taxes on gross receipts, paid under protest by B. & B. Transport Company to the State Commissioner of Finance and Taxation, in the sum of $4,852.21. The applicable parts of the Taxing Statute which authorized the collection of the tax in controversy read as follows:

"Each person engaged in the business of operating a transportation company shall, for the privilege of doing such business, pay to the state for state purposes an amount equal to three per cent (3%) of the gross receipts derived from intrastate business in this state.

"Within the meaning of this item, each person operating a railroad, aeroplané, boat or barge, or an express company, or a street railway, or engaged in the business of transporting persons or property or freight for hire by motor vehicle, whether as a common carrier or as a contact [contract] hauler . . . shall be deemed to be a 'transportation company.' . . .

"It is the intention of this item to levy a tax for the privilege of engaging in intrastate commerce carried on

wholly within the state and not a part of intrastate [interstate] commerce. . . ." Section 1248.134, Williams' Code.

It is the contention of the complainant that the State had no right to collect the tax of 3% upon its gross receipts because all its revenues were derived solely from operations in interstate commerce, and therefore exempt. The Commissioner of Finance and Taxation contends that all of the complainant's gross receipts and revenues arose from transportation in intrastate commerce.

The chancellor sustained the Commissioner's contention and dismissed the bill. An appeal was thereupon prayed and granted to this Court.

The facts upon which the complainant bases its right of action are well stated in the Chancellor's opinion as follows:

"It appears from the record in the cause that the complainants entered into a contract with the Army Air Forces to haul gasoline during the war years of 1943, 1944 and 1945, from Nashville, Tennessee, to the Nashville Municipal Airport known as 'Berry Field,' about eight miles from Nashville, the Smyrna Air Base, about twenty-three miles from Nashville, and Northern Field at Tullahoma, Tennessee, about seventy-five miles from Nashville. The gasoline consisted only of high octane aviation. It was acquired by the Air Forces at refineries in Illinois, Texas and Kentucky and was shipped into Nashville on government owned river barges. When it reached Nashville it was unloaded from the barges and placed in storage tanks owned by the River Petroleum Corporation, of Nashville, under a lease agreement had between said corporation and the United States Army

Air Forces. The fuel was then transported by trucks of the complainants from the storage tank to the respective air fields, and most of the time did not remain in Nashville as long as thirty days, since the demands at the air fields were great, and it was a problem to keep an adequate supply of gasoline on hand. . . ."

"The complainants hauled said gasoline in their trucks from the storage tanks in Nashville, to the respective air fields, for which they were paid 5½¢ per hundred weight on hauls from Nashville to Berry Field and the Smyrna Air Base and 7½¢ per hundred weight on hauls from Nashville to Tullahoma."

While the gasoline was tentatively allocated to the three Army Air Fields in Middle Tennessee, we find from the record that the Air Forces reserved the right at all times to divert the fuel from the River Petroleum Corporation's storage tanks to any base in the United States. On one occasion 12,000 gallons were shipped from the storage tanks to Camp Campbell in Kentucky.

The assignments of error are:

1. "The Chancellor erred in failing to rule that the transportation of gasoline from the tanks in Nashville to the army airfields was part of the interstate transportation of the gasoline and that any attempt by the State of Tennessee to levy a tax thereon is a tax upon the privilege of engaging in interstate commerce, and therefore invalid.

2. "The Chancellor erred in finding and ruling, in effect, that the gasoline was 'stored' in the tanks in Nashville, and that the interstate movement ceased at that point."

From the foregoing assignments and the argument of able counsel the question at issue falls within a very nar-

row compass. It is argued by the counsel, "The gasoline was not placed in the tanks at Nashville for storage but was pumped into the tanks and constantly taken out by appellants only because that was the only available physical means of continuing the transportation" to the Army Air Fields where the government intended to use it.

The Commissioner's argument in support of the chancellor's decree is that the gasoline *came to rest* in Tennessee "at the time it was delivered, unloaded and placed *in storage* in Nashville" and that its further transportation by the complainant from the storage tanks to the Army Air Bases was intrastate.

It thus appears that counsel for both appellant and appellee draw different conclusions from the uncontradicted facts. The crux of the whole matter is whether or not these shipments came to rest when the gasoline was pumped into the storage tanks at Nashville. We are asked to hold as a matter of law that such consignments were still in interstate commerce. It is not important that the storage was for brief periods if its ultimate destination was more or less indefinite. We think the record before us shows beyond any question that the final destination of these shipments was uncertain and that the gasoline was placed in the tanks to be held until it should be needed at one place or another. The consignee was authorized to divert it, or distribute it, to any number of places both inside and outside the State of Tennessee. Of course the greater part of it, doubtless the most of it, was for the three airfields. But it was subject to be diverted elsewhere if there was greater need for it at some other place. The fact that the River Petroleum Corporation issued bills of lading when the gasoline left its storage tanks is important only as show-

ing that it was being held subject to the orders of the consignee; nor is the applicable rule of law affected by the fact that the consignee was the United States Government.

The cases cited by counsel for the appellant and the. appellee, in which the courts have labored with the question of when a shipment ceases to be in interstate commerce are almost without number. We surely cannot and will not undertake to discuss and distinguish the numerous cases cited on the respective Briefs. Counsel for appellant states that the principal cases relied on are *Western Oil Refining Co.* v. *Lipscomb*, 244 U. S. 346, 37 S. Ct. 623, 61 L. Ed. 1181; *Carson Petroleum Co.* v. *Vial*, 279 U. S. 95, 49 S. Ct. 292, 73 L. Ed. 626, and also 15 C. J. S., p. 290, Section 25, under the title Commerce wherein the general rule is fully stated.

■ Many decisions of the United States Supreme Court are cited as conflicting with cases relied on by the Commissioner of Finance and Taxation, and especially our own cases of *Spur Distributing Co.* v. *Lindsey*, 166 Tenn. 424, 62 S. W. (2d) 53, *Foster & Creighton Co.* v. *Graham*, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971, and *State ex rel.* v. *Standard Oil Co.*, 188 Tenn. 358, 219 W. (2d) 644, opinion by GREEN, C. J. *The Spur Distributing Co.* case and *Foster & Creighton, supra,* involved the assessment of a privilege tax upon gasoline kept in storage or for distribution. It was there insisted by the taypayer that it was still in interstate commerce and immune from taxation. The contention was overruled upon the authority of *Nashville C. & St. L. R. R. Co.* v. *Wallace*, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191, wherein it was held that gasoline upon being unloaded and stored, ceases to be a subject of transportation

in interstate commerce, and loses its immunity as such from State taxation. See *Spur Distributing Co., supra*, 166 Tenn. at page 428, 62 S. W. (2d) 53. But counsel for appellant insist that the cases cited have no application because the gasoline in the instant case *"was not stored,"* that the storage tanks and subsequent removal by truck was a "throat" through which it passed to the airfields. The argument is not without merit. But it seems to us to be fallacious because no account is taken of the fact that when the gasoline was pumped into the storage tanks its destination was *indefinite*. In other words the consignee could, and in one instance did, ship it to another point outside the State. Thus, the record establishes the fact that the storage was for the convenience of the consignee, awaiting the exercise of the consignee's reserved right to withdraw the gasoline from the storage tanks and ship it on to the point where it was found to be needed most. We will not draw any refined or artificial distinctions, as to when an article of commerce comes to rest and when it is still on its way, in order to protect the State's right to tax or to enable the taxpayer to evade it. However, the product should not escape taxation upon the notion that there is a continuity of transportation until it reaches the ultimate consumer unless this actually appears to be the case. If the shipment has actually "come to rest" as we find to be a fact in this case, it is no longer immune from taxation by the State.

The determining rule we have applied in deciding the question is found in *Independent Warehouses, Inc.*, v. *Scheele*, 331 U. S. 70, 67 S. Ct. 1062, 91 L. Ed. 1346 and *Atlantic Coast Line R. R. Co.* v. *Standard Oil Co.*, 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270. In the case of

*Independent Warehouses, supra,* it is said [331 U. S. 70, 67 S. Ct. 1065]:

"Where property has come to rest within a state, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the state, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the state and is thus subject to its taxing power."

The United States Supreme Court dealt with this question in *Nashville C. & St. L. R. R. Co.* v. *Wallace,* 288 U. S. 249, 53 S. Ct. 345, 349, 77 L. Ed. 730, 87 A. L. R. 1191, and we think it is applicable to the instant case. There the State sought to collect a tax upon gasoline in storage, which the railway company claimed to have purchased and received in interstate commerce, and for its exclusive use. The Court, speaking through Justice STONE, found from the facts that "the appellant was free to distribute the oil either within or without the State for use in its business or for any other purpose," and that gasoline when thus stored "ceased to be a subject of transportation in interstate commerce" citing many cases. The Court refused to follow *Carson Petroleum Co.* v. *Vial,* 279 U. S. 95, 49 S. Ct. 292, 73 L. Ed. 626 upon which appellant relies in the case before us.

We think the case most clearly in point is the opinion of GREEN, C. J., in *State of Tenn. ex rel.* v. *Standard Oil Co., supra,* and which was affirmed in 314 U. S. 573, 62 S. Ct. 112, 86 L. Ed. 464. In this case gasoline and kerosene were shipped from Louisiana to Memphis, Tenn. with the intention of the consignor that these products would be distributed to points inside and outside the State. It was held that these products were not immune from taxation by the State, citing *Atlantic Coast Line R.*

R. Co. v. *Standard Oil Co.*, 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270, and other cases, including *Minnesota* v. *Blasius*, 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131. The Chief Justice quoted at length from the latter case and we think it supports the Commissioner of Finance and Taxation rather than the appellant.

We do not consider the cases of *Carson Petroleum* v. *Vial and Western Oil Refining Co.* v. *Lipscomb, supra*, to be controlling. Neither of these cases was referred to when the United States Supreme Court sustained this Court in *State of Tenn. ex rel.* v. *Standard Oil Co., supra*, and later denied a petition to rehear. Moreover, Western Oil Refining Co. is distinguishable from the instant case in that there was no unloading and storage at Columbia and a later shipment to Mt. Pleasant. On the contrary, as pointed out by counsel for the Commissioner, "the same railroad cars in which the material was loaded at the point of origin transported the oil and barrels on to Mt. Pleasant from Columbia, Tennessee."

While the complainant's bill charges that the statute which authorizes the collection of the tax violates the Tennessee Constitution, this question is not presented in any assignment of error, and is pretermitted. In reply to this attack on the act it is sufficient to say the complainant's business, that of transportation in intrastate commerce, is declared to be a privilege and subject to be taxed as such. The constitutionality of the statute finds support in the following cases: *H. G. Hill Co.* v. *Whitice*, 149 Tenn. 168, 258 S. W. 407; *Humphries* v. *Carter*, 172 Tenn. 392, 112 S. W. (2d) 833; *Seven Springs Water Co.* v. *Kennedy*, 156 Tenn. 1, 299 S. W. 792, 56 A. L. R. 496; and *Sterchi Bros.* v. *Wallace*, 168 Tenn. 299, 77 S. W. (2d) 807. In *Hooten* v. *Carson*, 186 Tenn. 282, 209 S. W. (2d)

273, it is expressly held that a privilege tax can be measured by gross sales.

There is no error in the Chancellor's decree and it is affirmed.

All concur.