STATE *ex rel.* ARMSTRONG, City Atty., v. IKE
BERNSTEIN *et al.*\*

(*Jackson.*   April Term, 1921.

1. **NUISANCE.** House used for betting on horse races ''gambling
house'' within nuisance act.

In view of Acts 1907, chapter 88, sections 1, 2 (Shannon's Ann. Code,
sections 6817a2, 6817a3), and chapter 89, sections 1, 2 (Shannon's
Ann. Code, sections 6817a4, 6817a5), a house in which betting on
horse races is conducted is a "gambling house" within the nuisance
act, section 1, though not mentioned as such in Acts 1883, chapter
230, Section 1, and Acts 1899, chapter 5 (Shannon's Ann. Code,
Section 6807). (*Post, pp.* 81-83.)

Acts cited and construed: Acts 1907, ch. 88, secs. 1, 2; Ch. 89, secs.
1, 2; Acts 1883, ch. 230, sec. 1; Acts 1899, ch. 5; Acts 1913, ch. 2.

Cases cited and construed: Thrower v. State, 117 Ga., 753; Swigart
v. People, 154 Ill., 284; People v. Weithoff, 51 Mich., 203; Tatman
v. Strader, 23 Ill., 493; Ellis v. Beale, 18 Me., 337; Dyer v. Benson,
69 Ga., 609; James v. State, 4 Okl. Cr., 587; State v. Nashville
Baseball Assn., 141 Tenn., 456.

Code cited and construed: Secs. 6807, 6817a2, 6817a3, 6817a4,
6817a5 (S.).

2. **APPEAL AND ERROR.** On reversing decree dismissing bill at
conclusion of complainant's evidence, court did not err in remand-
ing for new hearing.

In a suit to abate a gambling house as a nuisance, the court of civil
appeals, on reversing the chancellor's decree dismissing the bill
at the conclusion of complainant's evidence on the ground it did not

---

\*The question as to whether horse racing is a game within gam-
bling statute, is discussed in notes in 7 L. R. A. (N. S.), 899, and 33
L. R. A. (N. S.), 828.

state a cause of action, did not err in remanding the cause for a new hearing; the motion to dismiss being in the nature of a demurrer to the bill. (*Post, pp.* 83, 84.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. F. H. HEISKELL, Chancellor.

W. P. ARMSTRONG, for appellants.

JNO. D. MARTIN, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed in the chancery court of Shelby county, in the name of the State of Tennessee, on relation of W. P. Armstrong, city attorney for the city of Memphis, against Ike Bernstein, Will McCall, Peck Maloughney, Will Nabors, Sam Latham, alias Sam Nathan, J. W. Walker, alias Andrew Carroll, and the unknown owner of the property 124 Monroe avenue in the city of Memphis, to have abated as a nuisance an alleged gambling house operated and controlled by defendants at 124 Monroe avenue in the city of Memphis.

The gambling which the bill alleged was being conducted and carried on at 124 Monroe avenue consisted in betting on horse races in violation of law, and an injunction was asked for in accordance with the provisions of chapter 2 of the Acts of 1913 (Second Extra Session

of the legislature; section 5164a1 of Shannon's Annotated Code), commonly known as the "Nuisance Act." Section 1 of said act provides that—"The conducting, maintaining, carrying on, or engaging in the sale of intoxicating liquors; the keeping, maintaining, or conducting bawdy or assignation houses; and the conducting, operating, keeping, running, or maintaining gambling houses in violation of the laws of this State, in any building, structure, or place within this State, and all means, appliances, fixtures, appurtenances, materials, and supplies used for the purpose of conducting, maintaining, or carrying on such unlawful business, occupation, game, practice, or device, are hereby declared to be public nuisances, and may be abated under the provisions of this act."

The required five days' notice was given by the chancellor that he would hear the application for an injunction.

Defendants filed demurrers to the bill, which, so far as the record shows, were never acted upon. They then filed answers and denied that they were operating a gambling house, and defendants Nabors and McCall averred that they occupied the premises at 124 Monroe avenue under a written lease running for a period of eleven months and fifteen days, and that under said lease they were conducting at said place a restaurant, barber shop, cigar stand, and soft drink stand.

Prior to the hearing of the application for an injunction, the bill was dismissed as to the defendant Bernstein, and he is no longer an interested party.

The hearing upon the complainant's application for an injunction was had before the chancellor on oral testimony. At the close of the complainant's evidence defendants moved for a dismissal of the bill. After hearing arguments upon the motion it was sustained and complainant's bill was dismissed. From this decree complainant appealed to the court of civil appeals. That court reversed the decree of the chancellor and remanded the cause for a new trial. Defendants Nabors and McCall brought the cause to this court by petition for the writ of *certiorari* and for review.

The decree of the chancellor states his reason for dismissing the bill. He found that the defendants Will Nabors and Will McCall were occupying the premises at 124 Monroe avenue under a lease from the owner of said building; that Nabors and McCall, operated a cigar stand, lunch room, and billiard parlor in said building; that betting upon horse races was also being carried on in said building, both upstairs and downstairs, by the defendants Peck Maloughney and Sam Latham, alias Sam Nathan, with the knowledge and consent of defendants Nabors and McCall, Latham and Maloughney using a desk and betting sheets and other appliances used in betting on horse races; that one could go to said premises and place a bet on horse races at almost any time he desired to do so, as shown by the testimony of witnesses who had participated in said betting.

The decree further recites that the chancellor did not hear any proof from defendants because of the construction which he placed upon the nuisance statute; the chancellor being of the opinion that defendants

were not conducting, operating, keeping,, running, or maintaining a gambling house in violation of law within the contemplation of the nuisance act. It was the opinion of the chancellor that, at the time of the passage of said act, the only gambling houses recognized under the law were those mentioned in section 6807 of Shannon's Annotated Code. This section provides as follows:

"Any person who shall keep a room, hall, or house for the purpose of encouraging or promoting, aiding or assisting the playing of any game of keno, craps, faro, three-card monte, mustang, red and black, high ball, roulette, twenty-one and hazard, or who shall keep or exhibit such gaming table, or operate the same, either as owner or employee, shall be deemed guilty of a felony, and, upon conviction, shall be fined not less than two hundred nor more than five hundred dollars, and imprisoned in the State penitentiary not less than one nor more than three years."

The chancellor was of the opinion that the conducting and carrying on of betting on horse races in a house, as shown by complainant's proof, does not constitute said house a gambling house within the meaning and contemplation of the nuisance act.

Section 6817a2 of Shannon's Annotated Code (Act of 1907, chapter 88, section 1) provides as follows:

"Any person who, either as owner, agent, officer, or employee, shall, in any room, hall, house, or in any inclosure or upon any track, path, road, or course, whether within or without an inclosure, in this State, engaged in encouraging, promoting, aiding, or, assisting in the operation of a betting book, or a French mutual pooling

device, upon any kind of a horse race or races, or in selling auction pools upon any horse race, or shall in any other way encourage, promote, aid, or assist any person or persons to bet or wager upon a horse race or races, run or trotted or paced, within this State or elsewhere, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than one hundred dollars nor more than five hundred dollars and imprisoned in the county workhouse for a period of not less than six nor more than twelve months.''

Section 6817a3 (Act of 1907, chapter 88, section 2) reads:

''Any person in this State who shall make any bet or wager upon the result of any horse race or races, whether said race be run, paced, or trotted, within this state or elsewhere, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars nor more than two hundred and fifty dollars and imprisoned in the county workhouse for a period of not less than three months nor more than twelve months.''

Section 6817a4 (Act of 1907, chapter 89, section 1) provides:

''It shall be unlawful for any person, persons or corporation, whether as owner, lessee, or otherwise, to keep or have under his, their, or its control or management any room, hall, or house, or a track, path, road, or course, whether within or without an inclosure, for the purpose of encouraging, promoting, aiding, or assisting in any bet or wager upon any kind of a horse race or horse races, or where any bet or wager is permitted to be made upon any kind of horse race or horse races,

whether by bookmaking, auction pools, French mutuals, or in any other manner or by any other device whatsoever."

Section 6817a5 (Act of 1907, chapter 89, section 2) provides:

"Any person violating any of the provisions of the preceding section shall be guilty of a felony, and, upon conviction in a court of competent jurisdiction, shall be fined not less than two hundred and fifty dollars nor more than five hundred dollars, and be imprisoned in the penitentiary not less than one year nor more than three years."

In *Thrower* v. *State,* 117 Ga., 753, 45 S. E., 126, it was held that betting on a horse race is gaming within a statute prohibiting the keeping of gaming houses.

In *Swigart* v. *People,* 154 Ill., 284, 40 N. E., 432, affirming 50 Ill. App., 181, it was held that a room kept and used for the purpose of bookmaking and selling of pools contingent upon the result of horse races was a common gaming house within the meaning of a statute which prohibited the keeping of "a common gaming house."

In *People* v. *Weithoff,* 51 Mich., 203, 16 N. W., 442, 47 Am. Rep., 557, it was held that the use of a room for the purpose of selling pools on horse races makes it a gaming room within the meaning of a statute prohibiting the keeping and maintaining of a gaming room.

In *Tatman* v. *Strader,* 23 Ill., 493, it was held that betting on a horse race is gaming within the meaning of a statute which provides for the recovery back of any money or property lost by "playing at cards, dice, or any other game or games."

In *Ellis* v. *Beale,* 18 Me., 337, 36 Am. Dec., 726, it was held that horse racing is a game within a statute which permits the recovery of any money lost by betting on certain enumerated games, and "any other games."

To the same effect is the holding of the court in *Dyer* v. *Benson,* 69 G., 609.

In *James* v. *State,* 4 Okl. Cr., 587, 112 Pac., 944, 34 L. R. A. (N. S.), 515, 140 Am. St. Rep., 693, it was held that a house or place kept for the purpose of enabling persons to place bets and wagers upon horse races is a common gambling house and a nuisance *per se.*

We think it cannot be questioned that it was the intention of the legislature, when it passed the nuisance act to provide additional means for preventing the operation and running of all houses where gambling is carried on or conducted in violation of law. As said by the court of civil appeals, we can see no reason for narrowing the act to the operation of such houses as are prohibited by section 6807 of Shannon's Annotated Code.

The case of *State* v. *Nashville Baseball Association,* 141 Tenn., 456, 211 S. W., 357, 4 A. L. R., 368, is relied on by defendants in support of their contention that the nuisance act does not apply to houses in which gambling on horse races is conducted.

We do not think that case is controlling in the instant case. The opinion of the court in that case holding that the playing of the game of baseball on Sunday was not within the inhibition of the statute which made it unlawful for any merchant, artificer, tradesman, farmer, or other person to be guilty of doing or exercising any of

the common avocations of life, or of causing or permitting the same to be done by his children or servants, acts of real necessity or charity excepted, on Sunday, was based on the fact that at the time of the passage of the act in question the game of baseball had not been invented and was unknown, and hence the legislature could not possibly have had such game in mind at the time it passed said act.

In the instant cause it does not appear that, at time of the passage of the act incorporated in section 6807 of Shannon's Annotated Code (1883, chapter 230, section 1; 1899, chapter 5) horse racing was unknown; but, as hereinbefore shown, gambling on horse races and the operating of houses wherein such gambling was conducted had been declared unlawful and prohibited by statute for several years before the passage of the nuisance act, and the act prohibiting horse racing and gambling on horse races, and the operation of houses where such gambling was conducted were in force when the nuisance act was passed. In the instant cause the proof shows that the defendants Peck Maloughney and Sam Latham, alias Sam Nathan, were conducting habitually in the house located at 124 Monroe avenue, with the knowledge and consent of the defendants Nabors and McCall, betting on horse races, and the chancellor so found.

As said by the court of civil appeals, if the chancellor were correct in his holding that such gambling does not constitute a violation of the nuisance act, a very unusual and anomalous situation would result. Two buildings might adjoin each other; in one certain persons might be operating the game of craps, or any one of the other

games specified in section 6807 of Shannon's Code, while in the other persons might be operating the game and pursuing the business of accepting and encouraging bets on horse races. The games conducted in the first building would be a nuisance and the subject of abatement, while the business conducted and carried on in the adjoining building, although declared by statute to be gambling and prohibited as such, would be exempt from any such consequences. We are not willing to give any such interpretation to the nuisance act. We do not think the legislature intended that any such distinction should be made.

The complainant has also filed a petition for writ of *certiorari* to have reviewed the action of the court of civil appeals remanding the cause to the chancery court for a new hearing. It is insisted that no such procedure is authorized in equity causes. It is insisted that the court of civil appeals should have rendered a decree sustaining the bill and making the injunction permanent. The defendants' motion to have the bill dismissed was made at the conclusion of the complainant's evidence. The ground of the motion was that the nuisance act has no application to gambling houses of the character of the one in question, and that therefore the bill did not state any cause of action.

We think the proper way to have raised this question would have been by demurrer. This would have been in accord with the regular and usual chancery practice. We think, however, that the motion may and should be treated as in the nature of a demurrer to the bill, and the fact that the chancellor sustained the motion and dismissed the bill under the mistaken conception that it did not

state a cause of action should not preclude appellants from having the cause fully heard on its merits. In view of the chancellor's action on the motion, it was unnecessary for appellants to introduce any proof to rebut that which had been introduced by the complainant. The chancellor only heard one side of the cause. As before stated, the chancellor's action on the motion made it unnecessary for appellants to introduce any proof, and none was offered by them. We think justice demands that they be given an opportunity to offer any proof which they may have that would meet and defeat the allegations of the bill. The complainant could not possibly be prejudiced by this course, while, if this is not done, prejudice may result to appellants.

It results, therefore, that the judgment of the court of civil appeals is in all respects affirmed.