Dewey Burks *v.* State of Tennessee.

(*Nashville,* December Term, 1930.)

Opinion filed April 4, 1931.

W. Y. Boswell, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

For good cause shown the order heretofore entered affirming the judgment of the trial court is set aside.

Burks was convicted for carrying a pistol, was fined $50, and has appealed to this court.

Sheriff Norman, the only witness examined, testified, in full, as follows:

"I had a warrant for the arrest of the defendant, and when I arrested him, he was riding a horse along the public road, he had on him this gun. He had it in a

holster and it was under his overalls. It was in this County, Fentress, and State of Tennessee, and less than twelve months before this indictment in the case.''

## Cross-examination.

''It is not a pistol, the barrel is about twelve inches long, and it shoots a shell. It is a 410 gauge gun. The barrel is smooth in the bore and has no rifles in it. It has cut into the barrel the following: ''410 Gauge.'' I understand it will shoot a forty-five cartridge, but I never tried it. I do not know if a solid shot would burst the barrel, but I've heard it would.

''I file as exhibit No. 1 the gun in question, and as exhibit No. 2 one of the shells made to be used in it.

''It is commonly what is called a 'sawed-off shotgun,' and came into existence since automobiles became common. It is sometimes called an automobile gun.''

We have examined these exhibits, and agree with the sheriff in his statement that the weapon in question is not a pistol. We are further of the opinion that it is not a ''sawed-off shotgun,'' but is a single-barreled-breech-loading-miniature shotgun. This weapon is 15¾ inches in length; the barrel is 12½ inches long; and it shoots a shell 2¾ inches long, with a diameter of 15/32 of an inch. The shell is similar to that used in an ordinary shotgun, except that it is smaller. It contains a small amount of powder and a light load of number 6 shot. This gun could not be carried in an ordinary pocket, and could only be concealed about the person by the use of overalls or an overcoat, such as would be necessary to conceal a small rifle. It was evidently not designed to be used as an ordinary pistol.

Section 6641 of Shannon's Code makes it unlawful to carry "any kind of pistol, except the army or navy pistol, usually used in warfare, which shall be carried openly in the hand."

This statute does not define a pistol, and we have been referred to but one case that does. In *Fife* v. *State*, 31 Ark., 455, 25 Am. Rep., 560-561, it is said:

"Our act prohibits the carrying, as a weapon, 'any pistol of any kind whatever,' with provisions for exceptional cases.

"Pistol is from Pistola, a town in Italy, where pistols were first made. A pistol is a small fire-arm, or the smallest fire-arm used, intended to be fired from one hand, differing from a musket chiefly in size. Pistols were introduced into England in the year 1521. Webster.

"In the act the pistol is associated, in the prohibited list of weapons, with the dirk, butcher or Bowie knife, the sword or spear in a cane, brass or metal knucks, and the razor.

"From the company in which the pistol is placed, and the known public mischief which the legislature intended by the act to prevent, it is manifest that the pistol intended to be proscribed is such as is usually carried in the pocket, or of a size to be concealed about the person, and used in private quarrels and brawls, and not such as is in ordinary use, and effective as a weapon of war, and useful and necessary for 'the common defense.' "

It will be observed that the court approved the statement of Webster that a pistol differs "from a musket chiefly in size."

Following the definition of the word "musket" in Webster's New International Dictionary (1926 ed.), it is said: "Rifling was applied to muskets early in the 19th

century, and their development into the modern rifle was then steady, though gradual.'' The musket, rifle, and pistol, so far as we are aware, have always shot a solid ball, while the weapon in question shoots a light load of small shot.

''Shotgun'' is thus defined by Webster: ''A smooth-bore gun, often double-barreled, and now almost universally breech-loading, designed for firing shot at short range, and killing small game, esp. birds.'' This definition accurately describes the gun exhibited in this case.

In *Andrews* v. *State*, 50 Tenn., 165, the question involved was the constitutionality of chapter 13 of the Acts of 1870, which provided ''that it shall not be lawful for any person to publicly or privately carry a dirk, sword-cane, Spanish stiletto, belt or pocket pistol or revolver.'' The accused had been convicted for carrying a pistol, and it was insisted that this statute conflicted with article 1, section 26, of the Constitution of 1870, which is as follows:

''That the citizens of this state have a right to keep and to bear arms for their common defense; but the legislature shall have power, by law, to regulate the wearing of arms with a view to prevent crime.''

In sustaining the right of the legislature to prohibit the carrying of an ordinary pistol, the court said:

''What, then, is he protected in the right to keep and thus use? Not every thing that may be useful for offense or defense; but what may properly be included or understood under the title of arms, taken in connection with the fact that the citizen is to keep them, as a citizen. Such, then, as are found to make up the usual arms of the citizen of the country, and the use of which will properly train and render him efficient in defense of his

own liberties, as well as of the State. Under this head, with a knowledge of the habits of our people, and of the arms in the use of which a soldier should be trained, we would hold, that the rifle of all descriptions, the shotgun, the musket, and repeater, are such arms; and that under the Constitution the right to *keep* such arms, cannot be *infringed* or *forbidden* by the Legislature. Their *use*, however, to be subordinated to such regulations and limitations as are or may be authorized by the law of the land, passed to subserve the general good, so as not to infringe the right secured, and the necessary incidents to the exercise of such right.''

Dissenting opinions were filed by Justices NELSON and TURNEY, upon the ground that the legislature could not forbid the carrying of pistols.

Under this decision the citizen has a right to carry a shotgun, subject to regulation by the legislature. We are not aware of any such regulatory statute.

Penal statutes are to be construed strictly, and should be so definite as to give the citizen notice of the prohibited act. To say that one who carries a shotgun can be convicted under a statute prohibiting the carrying of a pistol violates this rule of construction.

The fact that this weapon is a miniature shotgun cannot affect the result. In the development of shotguns they have been gradually reduced in size, weight, and bore. We have no authority to say that when a shotgun is reduced to a certain size or weight that it becomes a pistol.

The judgment of the trial court will be reversed, and and the accused discharged.