PERRY *v.* SEVIER COUNTY BEER COMMISSION.

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

O. M. CONNATSER, of Sevierville, and HOBART F. ATKINS, of Knoxville, for appellant Perry.

E. E. CRESWELL, of Sevierville, and B. A. TOWNSEND, of Sevierville, for appellee Beer Commission.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This proceeding originated by a notice from the Sevier County Beer Commission to Charlie J. Perry to appear and show cause why a beer license issued to him should not be revoked. Specifications were filed by the Beer Commission setting out a number of grounds for the contemplated action, to all of which charges Perry interposed a general denial or plea of not guilty.

After a hearing before the Commission in which many witnesses were introduced, by a vote of two to one, Perry's license was revoked. Perry filed a petition for *certiorari* and there was a hearing in the circuit court on the record made before the Commission. The circuit judge expressed the opinion that he was without jurisdiction under decisions of this Court to interfere with the action of the Commission and dismissed the petition for *certiorari*. From this judgment Perry appealed to this Court, according to the provisions of Chapter 53 of the Public Acts of 1943.

Numerous charges were made against Perry. He was charged with running a disorderly house where lewd women and lewd men assembled, that the operation of his place caused a congestion of traffic, with some other derelictions, and particularly with violating a rule promulgated by the Commission prohibiting the sale of beer in the county after 7 p. m. in the evening.

Without undertaking to set out the proof here, it is sufficient to say that we have examined it carefully and find none of the charges sustained except that Perry did sell beer after 7 p. m. in the evening. Many witnesses were offered by Perry, including neighbors, several women among them, and Sevier County officers, tending

to show that he conducted an orderly place, permitted no lewd women there, refused to sell beer to drunken men, and in general ran a model place of the kind. As one of the witnesses said, it was as nice a "beer joint" as could be maintained.

The proof offered by the Commission, apart from sales after 7 p. m., only went to the extent of showing that on one occasion there was a fight in Perry's place and that on another occasion a pedestrian was run over by a car about a half mile from Perry's place and seriously injured. When this man was picked up he told the officer that he had been to Perry's. There is no showing, however, that Perry sold him any beer. Indeed, there is a suggestion that Perry refused to sell him beer. All the proof showed that there was ample parking space in front of Perry's establishment for visiting cars and there is no evidence that there was any congestion of traffic by vehicles assembled at that point. It is said that by reason of 7 o'clock closing ordinances in Sevierville and Gatlinburg that heavy traffic by beer drinkers to Perry's place resulted, since that was the only place where beer could then be obtained. We find no evidence to this effect. The fight mentioned seems to have arisen suddenly from an old grudge and Perry put the parties out of the place.

The case then comes down to a question as to whether the County Beer Commission had a right to make the regulation prohibiting the sale of beer by licensed dealers after 7 p. m. Indeed, remarks of counsel for the Beer Commission during the hearing of the evidence indicated that this was the main reliance of what we may call the prosecution.

We do not think that our statutes gave to the

County Court or the County Beer Commission the authority to promulgate this 7 p. m. regulation.

Section 10 of Chapter 69 of the Public Acts of 1933, authorizing the sale of beer prescribes several conditions with which an applicant for a license to sell beer in any county outside the limits of any town or city now incorporated shall comply. The discretion given to the county court or its beer commission is contained in the third subsection of that section of the Act as follows: "Third, that no such beverages will be sold except at places where such sale will not cause congestion of traffic or interference with schools, churches, or other places of public gathering, or otherwise interfere with public health, safety and morals; the County Court having the right to forbid such storage, sale or manufacture at places within two thousand (2,000) feet of such places of public gathering in its discretion."

In the sixth subsection of section 10 the following appears: "All incorporated cities and towns in the State of Tennessee are authorized to pass proper ordinances governing the issuance and revocation of licenses for the storage, sale, manufacture and/or distribution of such beer and/or other beverages as herein prescribed within the corporate limits, providing a Board of persons before whom such application shall be made, but the power of such cities to issue licenses shall in no event be greater than the power herein granted to counties, but cities and towns may impose additional restrictions, fixing zones and territories and providing hours of opening and closing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide."

It will be noted that the power given to incorporated cities and towns to provide hours of opening and closing

is referred to as one of the "additional restrictions" which an incorporated city or town, but not a county, is authorized to impose.

The Act of 1933 was amended, in certain respects, by Chapter 53 of the Public Acts of 1943. This amendatory Act, in Section 2, provided that no alcoholic beverage within the scope of the Act of 1933 should be sold between 12 o'clock midnight and 6:30 a. m., and that no such beverage should be sold between 12 o'clock midnight on Saturday and 11:59 p. m. on Sunday. Continuing, Section 2 contained this language: "Provided, however, that this paragraph shall not affect the power of governing bodies of municipal corporations by ordinance to fix the hours when such beverages may be sold within the incorporated limits of such respective municipalities. Municipal corporations may authorize the sale of such beverages in their respective corporate limits on Sundays or at such hours as may be prescribed by ordinance."

It thus appears that Chapter 53 of the Public Acts of 1943 fixed the hours at which beer might be sold generally over the State and authorized municipal corporations, but not counties, to fix different hours. In all this beer legislation the term municipal corporations is used as referring to incorporated cities and towns, not counties. The Legislature having made the sale of beer legal within certain hours, we think the counties and the county commissions are not authorized to vary or further restrict these hours. Indeed, the scheme of legislation seems designed to withhold from counties the power given to cities and towns to fix the hours of sale.

In *Wright* v. *State*, 171 Tenn. 628, 630, at page 637, 106 S. W. (2d) 866, at page 870 this Court said:

"There appears to be express authority of cities and towns to pass proper ordinances governing the issuance

and revocation of licenses. There is express provision for cities and towns to impose additional restrictions, fixing zonés and territories, providing hours of opening and closing, and such other rules and regulations as will promote public health, morals, and safety as they may by ordinance provide.

"If it were intended that the county court should exercise like authority and to make ordinances or resolutions beyond the provisions of the legislative act, this authority, we think, would not have been expressly given to municipal corporations without being given the county court. The language of the statute, granting such authority only to municipal corporations, seems upon its face to exclude county courts from making any regulation beyond the provisions of the statute. All criminal or *quasi*-criminal laws are strictly construed. *Burks* v. *State*, 162 Tenn. 406, 36 S. W. (2d) 892; *Payne* v. *State*, 158 Tenn. 209, 12 S. W. (2d) 528."

This language was expressly approved in *Huffer* v. *State*, 178 Tenn. 644, 645, 646, 162 S. W. (2d) 381.

We are satisfied that the construction given the beer statute by these cases is correct and, following the cases, we conclude that the Sevier County Beer Commission was without power to adopt the regulation requiring the sale of beer outside of municipalities to cease after 7 p. m.

It is insisted, however, that there was a meeting of the beer dealers of the county before the 7 o'clock ordinance was passed by the town of Sevierville in which they all agreed to 7 o'clock closing, that Perry was present at this meeting and agreed to it. This he denied, but a Commission's witness testified that no vote opposing the 7 o'clock proposition was cast at the meeting and, in view of the Commission's finding, we accept the latter statement. It

is further said that in his application for renewal of his license Perry agreed he would abide by the 7 o'clock regulation and that he is estopped now from seeking to violate his agreement and to ignore a condition upon which his license was renewed.

We think this is a mistaken view. Perry testified that he did observe the 7 o'clock rule until the passage of the Act of 1943. He supposed the Commission, prior to the Act of 1943, had a right to make the 7 o'clock regulation but that such right was taken away from them by the 1943 statute.

As we have seen, Perry was mistaken in his idea that the original beer statute, the Act of 1933, gave to the county or to the county commission the power to fix zones and hours of opening and closing. Estoppel, even judicial estoppel, does not apply to one acting or speaking upon a mistaken view of the law upon undisputed facts. *Tate* v. *Tate*, 126 Tenn. 169, 212, 148 S. W. 1042, and authorities there collected. Regardless of the Act of 1933, we think Perry was clearly right in supposing that the Act of 1943 deprived the counties and the commissions of any previous authority to fix hours of opening and closing for beer dealers other than the hours fixed by the statute. An exception was made in favor of municipal corporations, conferring power upon them to vary the statutory hours. This exception excluded every other exception. It is a familiar rule of statutory construction that where a general rule is established by statute with an exception, the Court will not curtail the former nor add to the latter by implication. An express exception, exemption, or saving excludes others. *Kelly & Co.* v. *State*, 123 Tenn. 516, 132 S. W. 193; *Turner* v. *Eslick*, 146 Tenn. 236, 240 S. W. 786; *Evans* v. *McCabe*, 164 Tenn. 672, 52 S. W. (2d) 159, 617. This exception

in favor of municipal corporations precludes any such exception in favor of counties and commissions.

The trial judge appeared to regard *State ex rel. Cravens* v. *Delk;* 175 Tenn. 614, 136 S. W. (2d) 524, as a ruling by this Court that the beer commissions had practically an unlimited discretion in granting or revoking licenses to sell beer. We did not intend to go so far. That was a *mandamus* case to compel the issuance of a license and *mandamus* does not issue to compel the discretion of an inferior tribunal. The case before us involves the revocation of a license issued. While as said in *Wright* v. *State, supra,* a license to sell beer is not a contract between the State and the licensee, nevertheless, neither our statutes nor this Court sanction the revocation of such a license when there is no evidence under the law upon which such action may be based.

It results that the judgment of the court below is reversed and these proceedings to revoke the license of Perry will be dismissed.