FRANKFORT DISTILLERS CORPORATION *v.* LIBERTO *et al.*

(*Nashville,* December Term, 1949.)

Opinion filed June 9, 1950.

SAM P. WALKER, of Memphis, for appellant.

L. E. GWINN and WILLIAM McCLANAHAN, both of Memphis, for appellees.

480

MR. JUSTICE PREWITT delivered the opinion of the Court.

Complainant appeals from the decree of the Chancellor in this cause sustaining defendants' demurrer and dismissing his bill.

The original bill sought a declaratory judgment as to the applicability of Chapter 58 of the Public Acts of 1937, Fair Trade Act, to the brands, trade-names or trade-marks, of liquors sold in the State of Tennessee, when contracts or agreements pursuant to the Fair Trade Act have been executed and signed between the manufacturer (complainant) and numerous retail liquor dealers in Memphis and elsewhere, covering the price to be charged by those retail dealers for the special brands of liquor manufactured by complainant. The material provisions of the Act in question are as follows:

"An Act to protect trade-mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name.

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the State of Tennessee by reason of any of the following provisions which may be contained in such contract:

"1. That the buyer will not resell such commodity except at the price stipulated by the vendor.

"2. That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases:

"1. In closing out the owners' stock for the purpose of discontinuing delivering any such commodity.

"2. When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

"3. By any officer acting under the orders of any court.

"Sec. 1½. *Be it further enacted,* That wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of Section 1 of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract,

is unfair competition and is actionable at the suit of any person damaged thereby.

"Sec. 2. *Be it further enacted,* That this Act shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices.

"Sec. 3. *Be it further enacted,* That the following terms, as used in this Act, are hereby defined as follows:

" 'Producer' means grower, baker, maker, manufacturer or publisher.

" 'Commodity' means any subject of commerce."

The bill states that complainant is a nonresident corporation manufacturing three well-known brands of whiskey, to wit: Four Roses, Hunter and Paul Jones: that these brands are advertised nationally and locally and sold exclusively in interstate commerce through wholesale dealers or distributors; that these branded products are sold under specific trade-names and are in turn sold by the various distributors to retail liquor dealers in the State, and particularly in the City of Memphis, and by them in turn sold to their customers, that is the public generally.

The bill further states that complainant has entered into numerous Fair Trade contracts with a number of retail dealers under the authority of the above-quoted Act and had established a fixed price for the sale and distribution of each brand; that it is the purpose of these contracts to stabilize the market; that complainant manufactures these brands and advertises them extensively so that they are in open and fair competition with other distillers who are selling in the open market similar products; that complainant is in open and fair com-

petition with all other distillers selling products of the same general class.

The bill charges that defendants were all selling these especially branded bottled products under the prices fixed in the contracts and had announced that they were going to continue this price cutting.

The bill further charges that each one of the defendants was notified of the execution of these various contracts and was given the opportunity to execute a similar contract, which they refused to do, and they, therefore, had violated the terms of the Fair Trade Act.

Defendants demurred to the bill on several grounds, and the points relied on in the demurrer are:

1. The Fair Trade Act is unconstitutional in that it violates Section 22 of Article 1 of the Constitution of Tennessee, and likewise violates Section 5580 of the 1932 Official Code of Tennessee. This provision of the Constitution and this Act both prohibit monopolies in Tennessee.

2. Chapter 58 of the Acts of 1937, Fair Trade Act, is not applicable to the liquor business because the Act was passed when the sale of liquor in Tennessee was illegal and was not made legal until the passage of Chapter 49 of the Acts of 1939.

3. The sale and distribution of liquor is controlled and governed solely and exclusively by Chapter 49 of the Acts of 1939 known as the Local Option Act which is special legislation constituting an entity and so controls the liquor business that general legislation such as the Fair Trade Act was not applicable to liquors that were sold under special brands, trade-names or trade-marks. Said Act is a complete entity and the general laws have no application.

4. The bill seeks to impose on defendants obligations of contracts to which they are not parties.

5. The bill does not set out a cause of action sufficient to warrant the issuance of an injunction.

We think the first contention, that the Fair Trade Act is unconstitutional in that it violates Section 22 of Article 1 of the Constitution of Tennessee prohibiting monopolies, is governed by the following cases: *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.*, 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109, 106 A. L. R. 1476; *Ely Lilly & Co.* v. *Saunders*, 216 N. C. 163, 4 S. E. (2d) 528, 125 A. L. R. 1308; *Miles Laboratories* v. *Owl Drug Co.*, 67 S. D. 523, 295 N. W. 292; *Goldsmith* v. *Mead Johnson & Co.*, 176 Md. 682, 7 A. (2d) 176, 125 A. L. R. 1339; *Sears* v. *Western Thrift Stores of Olympia*, 10 Wash. (2d) 372, 116 P. (2d) 756; *Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167, 7 N. E. (2d) 30, 110 A. L. R. 1411; *Weco Products Co.* v. *Reed Drug Co.*, 225 Wis. 474, 274 N. W. 426; *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.*, 128 Conn. 596, 24 A. (2d) 841.

In *City of Memphis* v. *Memphis Water Co.*, 52 Tenn. 495, 529, this Court said: ''We know of no better definition of a monopoly, than that given by Lord Coke, and adopted by the Supreme Court in the case of. *Charles River Bridge* v. *Proprietors of Warren Bridge*, 11 Pet. 420, 9 L. Ed. 773: 'A monopoly is an exclusive right granted to a few, of something which was before of common right—so that it is not a case of monopoly, if the subject had not the common right or liberty before, to do the act, or possess or enjoy the privilege or franchise granted as a common right.' ''

The above case was cited with approval by this Court in the later case of *Memphis Power & Light Co.* v. *City of Memphis*, 172 Tenn. 346, 112 S. W. (2d) 817.

It should be borne in mind that the provisions of the Fair Trade Act in question apply only to commodities produced by the manufacturer bearing his trade-mark, brand or name, and then only if they are in free competition with commodities of the same general class produced or distributed by others. The incidence of the law on trade affects only that portion of the commodity in which the producer has already a lawful monopoly of ownership, and which goes into distribution in a volume that may be fairly measured by the popularity which the good will and identifying name has achieved, but which can never amount to the whole. *Ely Lilly & Co.* v. *Saunders, supra; Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp., supra; Miles Laboratories* v. *Owl Drug Co., supra; Sears* v. *Western Thrift Stores of Olympia, supra; Goldsmith* v. *Mead Johnson & Co., supra.*

It seems that the Fair Trade Acts have been sustained in practically all the states except Florida. The Supreme Court of Florida held the Fair Trade Act of that State invalid in the case of *Liquor Store* v. *Continental Distilling Corp.*, Fla., 40 So. (2d) 371.

The purpose of the Act in question is not to protect the sale or to warrant the fixing of the price of any product, but rather is to protect the ownership of good will and the brand, trade-names and trade-marks under which any commodity is sold. The cases cited above make it clear that the protection of such brands is not price fixing.

It is next contended: (1) that the sale of liquor was illegal at the time of the passage of the Act in

question and, therefore, not in the contemplation of the Legislature; and (2) that the sale and distribution of liquor is governed exclusively by Chapter 49 of the Acts of 1939, which is complete within itself and constitutes a separate entity from the general laws of the State.

We do not think that the legality of the sale of liquor in Tennessee has anything to do with the application of the Fair Trade Act when properly construed.

Defendants rely upon the case of *State* v. *Nashville Baseball Ass'n.*, 141 Tenn. 456, 211 S. W. 357, 4 A. L. R. 368, in which it was held that baseball was wholly unknown and unheard of at the time of the passage of Chapter 47 of the Sunday Laws Act of 1803. In that case the proceedings were criminal in their nature and the Act was strictly construed. This Court held that under the circumstances the terms of the old statute did not apply to baseball.

In construing the Fair Trade Act and seeking to find out what was in the contemplation of the Legislature, it must be observed that the Eighteenth Amendment of the Federal Constitution had been repealed and the sale of liquor was well known and widely practiced. In 1933, the sale of beer, and in 1937, the manufacture of liquor, was authorized in this State. The Legislature must have had in mind legalizing the sale of liquor at the time of the passage of the Fair Trade Act. The sale of 3.2 per cent beer by weight was legalized in this State. by Chapter 69 of the Acts of 1933, and thereafter this Act was amended to legalize the sale of beer up to 5 per cent alcoholic content by Chapter 170 of the Acts of 1935.

It is contended that the sale and distribution of liquor is governed exclusively by Chapter 49 of the Acts

of 1939, or, in other words, that our statutes dealing with intoxicating liquor are placed in a classification peculiar to themselves and are dealt with by the courts as such. This is generally recognized by the decisions of this Court insofar as the exercise of the police power of the State is concerned; but so far as property rights are concerned, where liquor is legally dealt with, there is no difference in it and any other lawful commodity. *State ex rel.* v. *Bernstein*, 145 Tenn. 74, 238 S. W. 91; *Philadelphia Retail Liquor Dealers Ass'n.* v. *Pennsylvania Liquor Control Board*, 360 Pa. 269, 62 A. (2d) 53, 4 A. L. R. 1212; *Cain* v. *Bowlby*, 10 Cir., 114 F. (2d) 519.

■ It is further contended that the Act in question should not be applied to defendants because they have never executed Fair Trade agreements.

In *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp., supra,* the question of the applicability of the Act to noncontracting dealers is discussed. The contracting dealers must have the protection of the Act; otherwise, having signed a contract for its specific price, they would be helpless against noncontracting dealers cutting the price and taking their trade away from them. The cases cited hold that the purpose of the Act is to prevent unfair competition, and unfair competition would naturally include every noncontracting dealer.

■ A further contention goes to the right of complainant to injunctive relief.

"Courts of equity have been led to interfere by injunction for the protection of good will from a very early day due to the difficulty of ascertaining the extent of the injury or the value of the good will of a business." 24 Am. Jur., Good Will, Section 26; see Pomeroy's Equity Jurisprudence, Section 1355.

It results that the assignments of error of complainant must be sustained and the cause remanded to the Chancery Court of Shelby County for further proceedings consistent with this opinion.

GAILOR and TOMLINSON, JJ., dissent.

GAILOR, JUSTICE.

I respectfully dissent from the majority opinion on two grounds, namely: (1) the complainant is a foreign corporation and not qualified to do business in Tennessee. By the bill, filed against the defendants, who are residents, citizens and licensees of the State, the complainant, although it has no contract with the defendants, seeks to have the Tennessee Courts restrict the licenses of the defendants by enjoining them from selling liquor at a price contrary to terms of contract which complainant has with third parties who are not parties to this suit and are asserting no rights against the defendants.

Under similar facts, this Court refused relief in *United Artists Corporation* v. *Board of Censors*, Tenn. Sup., 225 S. W. (2d) 550. There, the unqualified foreign corporation sought relief against the Board of Censors of the City of Memphis. The exhibitors of moving pictures, who were primarily affected by the exercise of censorship, were not before the Court. This Court approved the action of the Trial Judge in dismissing the suit of the unqualified foreign corporation, saying in the course of the opinion: "We think the constitutionality of these statutes and ordinances cannot be questioned on the grounds of their abridgement of the right of 'freedom of speech' except by someone who has the right to speak and is denied the privilege of speaking. The gist of the

present action is that the statutes and ordinances herein assailed constitute an abridgement not of their right to speak but of the right of third persons to speak and who are not parties to this cause. In the instant case no exhibitors of moving pictures in Memphis, to whom these ordinances and statutes apply, are claiming that they are denied 'freedom of speech' or the right to contract with the petitioners.'' 225 S. W. (2d) at page 554.

In the present case, the competing local retailers under contract with the complainant who are directly affected by the alleged acts of the defendants, are not before the Court.

The question here presented is not the constitutionality of the statute, but the declaration of the application of a Tennessee statute to a local situation, and the injunction of local action. Clearly, both the declaration and injunction were matters within the sound discretion of the Chancellor. *Newsum* v. *Interstate Realty Co.,* 152 Tenn. 302, 278 S. W. 56; *Harrell* v. *American Home Mortg. Co.,* 162 Tenn. 371, 36 S. W. (2d) 888. Since complainant is a foreign corporation, not qualified to do business in Tennessee, and has no rights of contract against the defendants, the bill presents no equities to support a finding that the Chancellor abused his discretion in refusing the declaration sought.

As to my second ground of dissent, the sale of alcoholic liquor was not in contemplation of the Legislature when the Fair Trade Act was passed in 1937, and therefore, such sale is not regulated by that Act. The general sale of liquor is still illegal in Tennessee, and it is only by complying with the specific conditions and limitations of Chapter 49 of the Public Acts of 1939, passed two years after the Fair Trade Act, that the sale of liquor is permissible.

While it is true that the Act of 1937 purports to relate to all commodities that are the subject of commerce, it has been specifically and frequently held by this Court that the sale of liquor and the liquor traffic is the subject of special legislation, and extraordinary regulation, *Motlow* v. *State,* 125 Tenn. 547, 145 S W. 177, L. R. A. 1916F, 177; *State ex rel. Saperstein* v. *Bass,* 177 Tenn. 609, 152 S. W. (2d) 236; *State ex rel. Major* v. *Cummings,* 178 Tenn. 378, 158 S. W. (2d) 713, 139 A. L. R. 837; *McCanless* v. *State ex rel. Hamm,* 181 Tenn. 308, 181 S. W. (2d) 154, 153 A. L. R. 832, and I conclude from those authorities that the legal sale of liquor is exclusively governed and controlled in Tennessee by Chapter 49 of the Public Acts of 1939. The only Tennessee case cited in the majority opinion in support of its contrary holding, is that of *State ex rel.* v. *Bernstein,* 145 Tenn. 74, 238 S. W. 91. That case had to do with the application of the Nuisance Act to gambling and had nothing, whatever, to do with liquor. Cases cited in the majority opinion on this point from other jurisdictions would be persuasive only if it was shown that the statutory law of those jurisdictions is identical with that of Tennessee.

The Act of 1939 contains many express exceptions, limitations and conditions on the sale of liquor, so that it would have been an easy matter for the Legislature, if it had intended to do so, to include those exceptions and limitations of the Fair Trade Act which had been passed two years before. Since the Legislature did include many exceptions in the Act of 1939, under well-established rules of statutory construction, it is beyond the authority of the Judiciary to add another.

"It is a familiar rule of statutory construction that where a general rule is established by statute with an

exception, the Court will not curtail the former nor add to the latter by implication. An express exception, exemption, or saving excludes others.'' *Perry* v. *Sevier County Beer Commission,* 181 Tenn. 696, 703, 184 S. W. (2d) 32, 34; *Kelly & Co.* v. *State,* 123 Tenn. 516, 132 S. W. 193; *Turner* v. *Eslick,* 146 Tenn. 236, 240 S. W. 786; *Evans* v. *McCabe,* 164 Tenn. 672, 52 S. W. (2d) 159, 617.

In my view, it is unnecessary to invoke the other rule of law, equally applicable, announced in *State* v. *Nashville Baseball Ass'n.,* 141 Tenn. 456, 462, 211 S. W. 357, 4 A. L. R. 368, that since, at the time the Fair Trade Act was passed in 1937, the sale of liquor was unlawful in Tennessee, regulation of the liquor traffic by the Fair Trade Act could not have been in the contemplation of the Legislature. This rule, however, merely fortifies my conclusion.

I am authorized to say that JUSTICE TOMLINSON joins in the first ground of this dissent.