Larry T. HOWARD and Gene Roberts, Appellants,

v.

Teddy L. WILLOCKS, Chairman of the Jefferson County Beer Board, et al., Appellees.

Supreme Court of Tennessee.

June 30, 1975.

C. S. Rainwater, Jr., Rainwater & Rainwater, Dandridge, for appellants.

A. Benjamin Strand, Jr., Strand & Goddard, Dandridge, for appellees.

## OPINION

HENRY, Justice.

This appeal, from the decision of the Chancery Court at Jefferson City, upholding the action of the Jefferson County Beer Board, arises under the laws relating to the sale of beer and light alcoholic beverages as incorporated in Chapter 2, Title 57, Tennessee Code Annotated.

We are confronted with two first impression and determinative issues, viz.:

1. The power of a Tennessee County to limit the number of retail beer outlets within its confines.

2. The transferability of a beer permit from one designated location to another.

On May 22, 1972 the Jefferson County Beer Board issued appellants a permit to engage in the retail sale of beer in a rural area in Jefferson County. As a result of circumstances over which they had no control, it became necessary for appellants to vacate the premises in which they conducted their business as of January 15, 1975. As a result of this required termination, one of the petitioners purchased a tract of land, also in a rural area of Jefferson County, with the intent that appellants would move their business to that location.

The record reflects that on July 10, 1972, the Quarterly Court of Jefferson County adopted a resolution providing, in substance, that the total number of outstanding permits for the sale of beer at retail in Jefferson County, would be limited to a maximum of ten (10) at any given time. The record further reflects that at all times pertinent to this controversy there were a total of ten (10) outstanding permits, including that held by appellants. It further reflects that there were applications for permits on file. The result of this resolution, the number of permits outstanding, and the existence of prior permit applications was that appellants, instead of applying for a permit, elected to make application for a transfer of the existing permit.

The record further reflects that an application for a permit would have been futile.

A copy of the application for a transfer of the beer permit from the former location to the new location appears in the record and it meets all the statutory (Sec. 57–205 T.C.A.) requirements for the issuance of permits.

A hearing was held on appellants' application and, according to the minutes of the Jefferson County Beer Board meeting on January 13, 1975, the application was summarily denied, with no reasons being assigned.

Appellants promptly filed petiton for the writ of certiorari in the Chancery Court at Jefferson City. The Beer Board responded with a motion for summary judgment, insisting that there was no authority for the transfer of a beer permit, with the further and alternative insistence that review was by common law writ of certiorari instead of the statutory writ.

The Chancellor sustained this motion, holding that "A county beer committee is without authority to hear and/or to grant a 'transfer' of a validly issued beer permit from one designated location to another." Appellants have perfected their appeal.

## I.

A proper analysis and determination of the issues presented in this controversy necessarily involves a consideration of the general powers of Tennessee counties and their specific power and authority under the beer laws.

An excellent statement of the general nature of Tennessee counties will be found in *Weakley County v. Carney*, 14 Tenn.App. 688, 698 (1932), as follows:

Counties are not created for the purpose of general government, and because of this fact it has been said that they are corporations of low character, and cannot discharge corporate duties in the broad sense in which municipalities can discharge them. In *Burnett v. Maloney*, 97 Tenn. 697, 37 S.W. 689, 34 L.R.A. 541, it was said in substance that counties have their creation in the Constitution, and the statutes confer upon them all the duties which they possess, prescribe all the duties they owe and impose all the liabilities to which they are subject. Considered with respect to their powers, duties, liabilities, they stand low down in the scale of corporate existence. They are ranked as quasi corporations. They possess no powers except such as are conferred expressly or by necessary implica-

tion, and those are strictly construed and must be strictly pursued. They are distinguishable from private corporations aggregate, and from municipal corporations proper, which are more amply endowed with corporate life and function, because such corporations are intended to exercise the general functions of government over the inhabitants within the corporate limits.

In *Wright v. State*, 171 Tenn. 628, 106 S.W.2d 866 (1937), a landmark case decided under our beer laws, the Court had under consideration a resolution adopted by the Quarterly Court of Lawrence County, in substance, prohibiting the sale of beer upon any premises wherein dancing is permitted; prohibiting the sale of beer after 10:00 p. m.; and prohibiting sales within one thousand feet of any building where a public school or religious service is held. The Court noted its prior decisions holding that the powers entrusted to county courts, emanate from the Legislature and, "hence when a power claimed for them is not conferred it must be held not to exist". The Court takes note of the vast distinction of powers conferred by the Legislature upon municipal corporations as opposed to those conferred upon counties, in these words:

There appears to be express authority of cities and towns to pass proper ordinances governing the issuance and revocation of licenses. There is express provision for cities and towns to impose additional restrictions, fixing zones and territories, providing hours of opening and closing, and such other rules and regulations as will promote public health, morals, and safety as they may by ordinance provide.

If it were intended that the county court should exercise like authority and to make ordinances or resolutions beyond the provisions of the legislative act, this authority, we think, would not have been expressly given to municipal corporations without being given the county court. The language of the statute, granting

such authority only to municipal corporations, seems upon its face to exclude county courts from making any regulation beyond the provisions of the statute. 106 S.W.2d at 870.

Again the Court said:

(W)e find no authority for a county court to set up a law unto itself, applicable alone to that county, or to extend the law as defined by the statute. Id. at 871.

In *Huffer v. State*, 178 Tenn. 644, 162 S.W.2d 381 (1942) this Court held that the beer act "seems upon its face to exclude county courts from making any regulations beyond the provisions of the statute", and struck down a resolution of the Quarterly Court of Clay County providing that no beer permit should be issued for a longer period than one year.

In *Perry v. Sevier County Beer Board*, 181 Tenn. 696, 184 S.W.2d 32 (1944), the Court, relying upon *Wright, supra*, and *Huffer, supra*, held that a county beer commission had no right to make a regulation prohibiting the sale of beer after 7:00 p. m.

This Court has repeatedly held that counties have no authority other than that expressly given by statute or necessarily implied from the provisions of such statute. *Bayless v. Knox County*, 199 Tenn. 268, 286 S.W.2d 579 (1955).

Reference to the regulation of the sale of beer as incorporated in Chapter 2 of Title 57, Tennessee Code Annotated in general and to Sections 57–205 relating to county regulation and 57–208 relating to municipal regulation will indicate the very pronounced difference between the authority possessed by cities and counties. Not the least distinction is that Section 57–208 provides in part that:

(C)ities and towns may impose additional restrictions, fixing zones and territories and providing hours of opening and closing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide.

Counties are given no such authority. By virtue of this distinction, this Court has held that the authority of a city extends to outright prohibition of the sale of beer. *Grubb v. Mayor and Aldermen, Morristown*, 185 Tenn. 114, 203 S.W.2d 593 (1947); that municipalities have broad powers in the regulation of the sale of beer and may enact all reasonable measures deemed desirable for the protection of the morals of the community, *Gatlinburg Beer Regulation Committee v. Ogle*, 185 Tenn. 482, 206 S.W.2d 891 (1947); that Tennessee municipalities are given absolute discretion in the matter of regulation and control of the sale of beer, *Ketner, et al. v. Clabo, Mayor, et al.*, 189 Tenn. 260, 225 S.W.2d 54 (1949); and since they may regulate to the point of outright prohibition, they may exercise a lesser degree of control by limiting the number of establishments. *DeCaro v. City of Collierville*, 213 Tenn. 254, 373 S.W.2d 466 (1963).

But we reiterate no such authority has been conferred upon the counties of Tennessee.

While the counties did not have the right to make rules and regulations relating to the sale of beer, prior to 1965, they did have the virtually unbridled power to determine whether permits would be issued, and where a permit was denied the applicant had no remedy. *State ex rel. Camper v. Pollard*, 189 Tenn. 86, 222 S.W.2d 374 (1949). It is apparent from a survey of the reported Tennessee cases prior to 1965, that some of the counties of Tennessee prohibited the sale of beer by the simple expedient of declining to issue permits.

In 1965, the Legislature made a drastic change in this regard. By Section 1, Chapter 105, Public Acts of 1961, Section 57–205 T.C.A. was amended by adding at the end thereof a new section which reads in part as follows:

Any applicant seeking a license or permit under this section and who complies with

the conditions and provisions of this section *shall* have issued to him the necessary license or permit and in the event said license or permit is refused, the applicant shall be entitled to a hearing on his application for the issuance of a license or permit. (Emphasis supplied).

By this amendment, the Legislature mandated that an applicant for a beer permit, who complies with all the legal requirements, shall be entitled to have such license or permit issued to him. *Fentress County Beer Board v. Cravens*, 209 Tenn. 679, 356 S.W.2d 260 (1962). This amendment operates to leave the only issue in cases involving the denial of a beer permit as being "whether or not an applicant, under the proof, has met all the said conditions and provisions". *Cantrell v. DeKalb County Beer Board*, 213 Tenn. 568, 376 S.W.2d 480 (1964).

## II.

If an applicant is entitled, as a matter of right, to have a permit issued to him for the sale of beer, it necessarily follows that a permit holder seeking to move to a new location has a similar right. It is purely a matter of semantics to consider the application, in such a case, as being for a transfer. Regardless of how it is labeled, either by the applicant or by the beer board, the fact remains that, as a matter of fact and as a matter of law, the applicant is seeking a new permit to engage in the retail sale of beer in a new location. And most assuredly in this case, where the County Court of Jefferson County had adopted a regulatory resolution, clearly in excess of its authority, and in so doing, had forced appellants to label their application as an application for transfer, the county and its beer board would be estopped to assert that the application so made was for a transfer as opposed to an application for a permit.

Moreover, treating the application as being for a transfer, we find nothing in our law that would preclude a county beer board from transferring a permit from one location to another so long as the permittee continues to meet the personal qualifications and the new location meets all of the requirements of the statute. To be more specific, if the permittee and his proposed location meet all of the requirements of Sec. 57–205 T.C.A., the permit may legally and properly be transferred. Any other conclusion would be a triumph of form over substance. This, the law does not require.

We are not unmindful of the statement made in *McBride v. State*, 195 Tenn. 308, 259 S.W.2d 533 (1953) that:

This Court has held that a permit to sell beer cannot be transferred from one location and used in another. 259 S.W.2d at 534.

This statement comes on the heels of the Court's having framed the issue before the Court as being "whether a permit to sell beer is assignable". In support of the dictum hereinabove quoted, the Court cites two Tennessee cases.

The first of these, *Tucker v. Carter County Beer Board*, 191 Tenn. 210, 232 S.W.2d 38 (1950), involved the revocation of a beer permit in a case whether the permit holder was operating a place of business not established until 1949, under a permit which was issued in 1947. Not having been issued a new permit, his use at the subsequent location was obviously illegal and the Court so held.

The second case cited in *McBride* is *Sowell v. Red*, 192 Tenn. 681, 241 S.W.2d 775 (1951), wherein the factual situation was that the permit holder had moved to a new location and "(n)o new license was ever [issued] by the Beer Board, and no steps ever taken to transfer the license to the new premises . . . .".

Finally, in *McBride*, the crux of the Court's ruling, pertinent to this issue, was that "a permit issued to one person might not be used lawfully by another despite the fact that the location remained the same".

We do not think that these cases are authority for the naked proposition that a beer permit may not be transferred. As a maximum the import of their holding is that such a permit may not be transferred by unilateral action on the part of the permit holder. We hold that, under Tennessee law, a beer permit may be transferred, upon proper application to the quarterly court or its beer committee, and a showing of full compliance with Section 57–205 T.C.A. We hold that absent such compliance, the permit is not transferrable. Viewed in this light, as we think it must be, there is no variance between our holding in this case and the prior holdings of this Court.

It results that the judgment of the Chancellor is reversed and this cause remanded to the Chancery Court at Jefferson City, with directions to the Chancellor to cause the Beer Board of Jefferson County to issue forthwith a permit covering the property and premises described in their petition.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concurring.