UNITED ARTISTS CORPORATION *et al. v.* BOARD OF CENSORS OF CITY OF MEMPHIS *et al.*

(*Nashville,* December Term, 1949.)

Opinion filed December 17, 1949.

CANALE, GLANKLER, LOCH & LITTLE, DANIEL D. CANALE, of Memphis, PHILIP J. O'BRIEN, JR., New York City, TAYLOR & QUICK, of Memphis, for plaintiffs in error.

J. SEDDON ALLEN, DAVID N. HARSH, LAKE HAYS, JAMES J. PLEASANTS, JR., City Attorney, F. B. GIANOTTI, JR., Assistant City Attorney, KENNETH LARKEY, CHARLES M. CRUMP, ROBERT W. PHARR, all of Memphis, for defendants in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case involves the validity of the Private Acts creating the Board of Censors of the City of Memphis,

and also of Shelby County. For a clear understanding of the questions raised in the numerous assignments of error, it is necessary that we give a summary of the facts which gave rise to the proceedings in the circuit court in which petitioners sought a review of the official acts of the Board of Censors in writing a letter to one of the petitioners (United Artists Corporation) "that it was unable to approve" a certain motion-talking picture for exhibition in the City of Memphis. For convenience we will refer to the parties as they appeared in the trial court. The picture which is the subject of the present controversy, entitled "Curley", was produced by Hal Roach Studios, Inc. in the State of California and supposed to be distributed exclusively by United Artists Corporation to exhibitors in Tennessee. Both petitioners are foreign corporations.

The censorship boards of Memphis and Shelby County act under the authority of Chapter 54 of the Private Acts of 1921, as amended by Chapter 394 of the Private Acts of 1929, and Sections 1131-1139 of the Memphis Municipal Code, also Chapter 403 of the Private Acts of 1947, which authorized the censoring of pictures outside the City of Memphis.

The Board of Censors, following a private exhibition of the picture, wrote the following letter to the United Artists:

"Commission Government
"Memphis, Tenn.
"August 9 1947
"United Artists Corporation
"St. Louis, Missouri

"Gentlemen:

"The Memphis Board of Censors passes 'The Marauders' and the Bebe Daniels Picture, but I am sorry to have to inform you that it is unable to approve your 'Curley' picture with the little negroes as the south does not permit negroes in white school nor recognize social equality between the races even in children.

"Yours truly

"/s/ Lloyd T. Binford Chairman"

Upon the receipt of this letter the petitioners filed a joint petition in the circuit court seeking a review of the action of the Board of Censors. The petition alleged that the Board had banned the picture without legal authority, (1) that the Private Acts under which it acted were unconstitutional in that they denied to petitioner the right of freedom of speech and due process, (2) that it acted "solely on the ground that members of the colored race appear therein", (3) that in refusing to approve the picture for exhibition it was not supported by any fact and was "illegal, capricious and arbitrary", and "contravenes any authority purportedly delegated to or vested in said Boards", and hence was in derogation of the "due process", and "equal protection of the laws", as guaranteed by the constitution of Tennessee and of the United States.

The petition goes into great detail as to the nature of its business as producer and distributor, averring that under general license agreements between the distributor and exhibitors the considerations moving from the latter to the former in "many instances are based upon a percentage of the gross receipts of the motion picture theatre exhibiting said film", and in other cases it is upon a "flat" fee basis. The petition further re-

cites that in each and every case the transaction is one in interstate commerce; that when the exhibitor has finished showing the picture the film is returned to St. Louis, Missouri; that at no time are films or pictures "stored or carried in stock in Tennessee". It clearly appears from the averments of the petition that before any contract is made between the distributor and any exhibitor for the privilege of exhibiting any picture that it is first shown to the Board of Censors for their approval or disapproval. This was done in the instant case.

The petitioner, Hal Roach Studios, Inc., specifically alleges: "All such contracts for the distribution of petitioner's motion pictures are made outside the State of Tennessee, delivery of all films to distributors is made outside of Tennessee, and all funds due petitioner under such distribution contracts are paid to it outside the State of Tennessee; and petitioner has no place of business or branch office in the State of Tennessee; and owns no property in the State of Tennessee; and petitioner avers that it does not transact or do any business whatever in the State of Tennessee."

The petition sets forth in detail the several ordinances of the city and the resolutions by the Quarterly Court of Shelby County, conferring authority upon the Board, and alleges that no authority is given said Board to ban any picture from publication on account of race or color; that its authority, if any, extends only to censorship of pictures which are "immoral, lewd or lascivious", and that the picture, "Curley", in no wise falls under the ban of the statute or city ordinances.

The letter from the Board to United Artists is claimed to constitute all of the proceedings before the Board with respect to the motion picture "Curley".

There is no averment in the petition that either of the petitioners had entered into a contract with any exhibitor in Memphis or Shelby County to exhibit the picture, "Curley". The said petitioners treat the letter as a "prohibition" of the exhibition of the said picture and allege that the action of the Board "seriously prejudices and impairs the possibility of making additional contracts for the exhibition of said motion picture in theatres in the areas surrounding the City of Memphis" and other theatres "throughout the United States" and that petitioners will be damaged in excess of $50,000; and that as a result of the Board's action they are unable to make a contract with any exhibitor in Memphis and Shelby County.

The prayer of the petitioners is for a trial *de novo* under Section 9008 et seq. of the 1932 Code of Tennessee, and for the right to exhibit the picture before the court; that the act of the Board be declared "unauthorized and unlawful".

The Board of Censors moved the court to dismiss the petition upon the following grounds (for the sake of brevity we quote from the defendants' brief the substance of the fifteen grounds of the motion to dismiss.) : "That the Plaintiffs had not *themselves* undertaken to show the picture 'Curley,' and that no action is therefore taken against them; that the petition shows that no Memphis Theater has contracted or offered to show the picture, and that the alleged action of the Board has not prevented anyone having a right to act, from doing so; the petition further shows that no person has offered to exhibit the picture, and that the right to distribute same has not been interfered with; *that the petitioners United Artists Corporation and Hal Roach Studios, Inc.,*

*are doing an intrastate business in Tennessee without| qualifying as required by law;* and further, that the alleged rights of petitioners, if any, grow out of business done illegally in Tennessee, and petitioners United Artists Corporation and Hal Roach Studios, Inc., therefore may not use the Court of this State; that the alleged rights of petitioners arose out of an intent to do an intrastate business without proper qualification; that the right to show a motion picture is merely a privilege; that no right of free speech has been denied petitioners, nor does the action of the Board interfere with petitioners' right to make any public statement through any recognized medium of public pronouncement; that there is no allegation except by way of conclusion that the Board has acted illegally or beyond its jurisdiction; that the Board had a reason for its action, and that the Court will not substitute its judgment for that of the Board which in this case is made final by law.''

Contention is further made that the writ of *certiorari* is not available to plaintiffs in error, ''they not coming within the purview of the statutes, ordinances and resolutions'', and that their remedy would be for a declaratory judgment.

The trial judge sustained the defendants' motion and dismissed the petition, principally upon the grounds (1) that the statutes and ordinances complained of ''are limited in their scope and are applicable only to local exhibitors,'' (2) that petitioners were not engaged in the business of exhibiting pictures within the City of Memphis, or Shelby County, nor had they contracted with any exhibitor in said city or county, (3) that the action of the Board of Censors, consisting of the letter addressed to United Artists was ''advisory only'' and was

*coram non judice* and did not present a justiciable controversy.

The trial court declined to allow the film to be exhibited before him, to which action an exception was taken. The case was heard and disposed of as under the common law writ of *certiorari*.

The assignments of error (eleven in number) need not be stated in detail. The determinative questions may be stated, under the following sub-heads, as they appear on the petitioners' brief, the contention being made (1) "Censorship of Talking Motion Pictures Is Unconstitutional Per Se", (2) "Action of Board of Censors in Particular Case Is Illegal and Unconstitutional Even Though Censorship Is Not Unconstitutional Per Se", (3) "Petitioners Have Standing to Maintain This Action", (4) "Remedy of *Certiorari* Is Available to Petitioners", (5) "The Petitioners, Engaged Exclusively in Interstate Commerce, Are Not Required to Qualify Under Foreign Corporation Laws in Order to Maintain This Action".

Able counsel for the appellants have cited many cases in which the courts have dealt with the propositions relating to freedom of speech and of the press. We are in no wise in disagreement with the appellants as to the fundamental principles announced in these decisions, and especially with the insistence that there is no authority in the law "To use race or color as the sole legal basis for censorship of talking-motion pictures". The trial judge pretermitted consideration of the constitutional guarantee of free speech because in his opinion the statutes and ordinances assailed by the appellants did not apply to them in that they were not exhibitors, and fur-

thermore the letter of the Board to United Artists was only advisory and was *coram non judice*.

■ We think the constitutionality of these statutes and ordinances cannot be questioned on the grounds of their abridgement of the right of "freedom of speech" except by someone who has the right to speak and is denied the privilege of speaking. The gist of the present action is that the statutes and ordinances herein assailed constitute an abridgement not of their right to speak but of the right of third persons to speak and who are not parties to this cause. In the instant case no exhibitors of moving pictures in Memphis, to whom these ordinances and statutes apply, are claiming that they are denied "freedom of speech" or the right to contract with the petitioners.

■ It may be that there are persons beyond the borders of Tennessee who would contract to exhibit the picture, "Curley", but for the action of the Board of Censors. But we do not understand that corporations resident in a foreign state may invoke the authority and jurisdiction of the courts of this State to strike down local laws and ordinances to aid them in carrying on their business in some other state.

If the appellants are legally subject to the provisions of these penal statutes and ordinances it is by virtue of the fact that they are "doing business" in Tennessee in violation of law, not having complied with Code Section 4128. The trial judge reached this conclusion and we think it cannot be seriously controverted.

Before considering the question of whether or not appellants are "doing business" in this State in violation of law we must respond to the contention that the letter

from the Board to United Artists was advisory only. Appellants claim it was a final order of the Board.

We think in all fairness to the Board of Censors the appellants should have asked for a final hearing and made a request for a reply as to whether their action was a finality before resorting to legal proceedings. We do not mean to say that this was a prerequisite to their right to institute this suit, but it indicates an indifference to whether it was final or "advisory".

Responding to appellants' contention that their business is entirely interstate and not intrastate the real solution to the problem in a large measure is found in the facts.

It is doubtless true as insisted by appellants that, "Whether transactions between foreign corporations constitute interstate commerce, as distinguished from doing business within the State is a Federal question on which Federal decisions are controlling." Our own case of *Lloyd Thomas Co.* v. *Grosvenor,* 144 Tenn. 347, 233 S. W. 669, supports this contention and none other need be cited.

While counsel for both the appellants and the appellees have cited numerous cases on their respective briefs, dealing with the question before us, the well settled and determinative rule appears in *Independent Warehouses, Inc.* v. *Scheele,* 331 U. S. 70, 67 S. Ct. 1062, 1065, 91 L. Ed. 1346, wherein it is said: "Where property has *come to rest* within a state, being held there at the pleasure of the owner, *for disposal or use,* so that he may dispose of it either within the state, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the state and is thus subject to its taxing power." (Italics ours.) See

also *Nashville C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A.L.R. 1191.

Now what are the facts as shown by the record and which we accept as true but not the conclusion of the pleader? The petition shows without question that the United Artists ships its films from St. Louis, Missouri, to Memphis, Tennessee, to a studio in the latter city, prior to offering to contract for any local exhibitor. United Artists rents the studio, hires an operator for the purpose of exhibiting the picture to the Censors and possibly exhibitors who may be interested. No contract, however, with any exhibitor has been executed. Following this exhibition the film is returned to the United Artists office in St. Louis, Missouri. If and when the United Artists closes a contract with an exhibitor the former receives a percentage of gross receipts from the sale of theatre tickets. The title to the film remains at all times in the petitioners.

In the light of the foregoing undisputed facts there appears no escape from the conclusion that the United Artists has a financial interest in the outcome of every performance. Viewing the facts as set forth in the petition we find that the film *"comes to rest"* in this State when it is exhibited at a local theatre for the enrichment of appellants. It does not *come to rest* for any other purpose and constitutes "doing business" in Tennessee. United Artists and the local exhibitor are jointly engaged in a local business enterprise, the distributor furnishing the mechanical device (the film) while the exhibitor furnishes the theatre as well as the labor necessary to exhibit the picture.

It is insisted by appellants' counsel "The business of shipping motion picture films into the State for exhibi-

tion in local theatres, pursuant to contracts therefor solicited in the State but approved and entered into outside the State, constitutes interstate commerce", citing *Binderup* v. *Pathe Exchange, Inc.*, 263 U. S. 291, 44 S. Ct. 96, 99, 68 L. Ed. 308, and many other Federal decisions.

■ This case involved a contract in violation of the Federal Anti-Trust Laws and the same is true of other cases cited. The Court stated the rule upon which it rested its opinion as follows: "The general rule is that where transportation has acquired an interstate character 'it continues at least until the load reaches the point where the parties originally intended that the movement should finally end.' "

■ This rule runs through all the decisions cited by appellants and must be accepted as a correct statement. The Court, however, gave no consideration to the question of what constitutes "doing business", but only with the sale of the right to exhibit the film. We think the weight of authority sustains the proposition that where property has reached its final destination, and held for local business purposes, the consignor and consignee sharing in the profits of the business, it loses its interstate character and must be adjudged to be intrastate business. The taxation of such a business is not a burden upon interstate commerce. *General Oil Co.* v. *Crain*, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; *Browning* v. *City of Waycross*, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828; *Fox Film Corporation* v. *Trumbull, D. C.*, 7 F. 2d 715, 722. The reasoning of Mr. Chief Justice White in the *Browning case* is well nigh conclusive of the question before us.

The Federal decision more directly in point is *Tad Screen Advertising* v. *Oklahoma Tax Com.*, 10 Cir., 126 F. 2d 544, 548, in which the Court said: "It is well settled that a producer or manufacturer who ships motion picture films from one state to exhibitors in another state to be exhibited by the latter is engaged in interstate commerce. But when an article that has been transported in interstate commerce has arrived at a destination and is there held for use or disposal, it passes under the protection of state law and becomes subject to the taxing and police power of the state." The Court cites as authority for the foregoing well considered statement: *General Oil Co.* v. *Crain; Fox Film Corp.* v. *Trumbull;* and *Browning* v. *City of Waycross, supra,* and other Federal decisions.

We think our own cases of *Buchanan* v. *Carson,* 188 Tenn. 420, 220 S. W. 2d 115; *State ex rel. McCanless* v. *Standard Oil Co. of Louisiana,* 188 Tenn. 358, 219 S. W. 2d 644, which was affirmed in 314 U. S. 573, 62 S. Ct. 112, 86 L. Ed. 464; *Interstate Amusement Co.* v. *Albert,* 128 Tenn. 417, 161 S. W. 488; *R. J. Reynolds Tobacco Co.* v. *Carson,* 187 Tenn. 157, 213 S. W. 2d 45, and others, are in line with the foregoing Federal decisions.

Our final conclusion is that "if . . . . the power to accomplish by contract what is here claimed were to be upheld, all lines of demarcation between national and state authority would become obliterated". [233 U. S. 16, 34 S. Ct. 580.] This was the statement by Chief Justice White in *Browning* v. *City of Waycross, supra,* and it is equally true in the instant case.

█ Under the admitted facts of this case, and the authorities cited, the appellants are subject to Code Sec-

tion 4128, and not having complied with its provisions the suit is not maintainable in the Courts of Tennessee.

We pretermit consideration of other assignments of error, based upon the trial judge's alleged hearing of the case under the common law writ of *certiorari*. The determinative questions have been considered by this Court upon the assumption that the facts stated in the letter from the Board to United Artists was true.

All assignments of error are overruled and the judgment of the trial court is affirmed.

All concur.