**EMBASSY PICTURES CORPORATION**

v.

**F. C. HUDSON et al., Members of the Board of Censors of the City of Memphis and Claude A. Armour, John T. Dwyer, William W. Moore, and William Farris, Mayor and Commissioners of the City of Memphis, and J. C. McDonald, Chief of Police, City of Memphis.**

Civ. A. No. 5022.

United States District Court
W. D. Tennessee, W. D.
Feb. 11, 1964.

George W. Grider, W. J. Michael Cody, Memphis, Tenn., Ephraim London, New York City, for plaintiff.

Robert M. McRae, Jr., F. B. Gianotti, Jr., Memphis, Tenn., for defendants.

BAILEY BROWN, District Judge.

This is an action filed by Embassy Pictures Corporation, a Massachusetts corporation with principal place of business in New York City, seeking declaratory and injunctive relief against the Board of Censors and certain officials of the City of Memphis. The defendants have filed a motion to dismiss.

Plaintiff alleges in its complaint that it is the sole owner of the right to exhibit and the right to license for exhibition a movie known as "Women of the World," a copy of which is exhibited to the complaint. Plaintiff further alleges that it exhibited the film to the Board of Censors, which advised plaintiff that the film could not be shown in Memphis unless four sequences were deleted; that deletion of these sequences would impair the continuity and diminish the artistic and commercial value of the film; that through its attorneys it informed the Censor Board that it was unwilling to make the deletions and made formal request for permission to show the film in its complete form and that this permission was denied; that as a result of this denial plaintiff was damaged in a sum in excess of $25,000.

Exhibited to the complaint is a copy of the city charter provisions and ordinances having to do with censorship. As the charter provisions clearly authorize all of the ordinances, we will here outline, and succinctly, only the ordinance provisions.

Under these provisions it is made unlawful to exhibit motion pictures which are "immoral, lewd, obscene or lascivious" or which are "inimical to the public safety, health, morals or welfare." (An exception is made for motion pictures privately exhibited for scientific or educational purposes or which are exhibited by any recognized educational institution for educational purposes.) A Board of Censors, appointed by the defendant Board of Commissioners of the City, is

created with power to prohibit the public exhibition of motion pictures found by the Censor Board to be lewd, lascivious, immoral or obscene or to be inimical to the public safety, health, morals or welfare. It is made unlawful for any exhibitor or "* * * any other person participating in, having control of, or any financial interest in * * *" a motion picture to fail to obey an order of the Censor Board. Moreover, aiding or abetting an unlawful exhibition of a motion picture is made a misdemeanor. The Censor Board is granted the power to require preview of pictures to be publicly exhibited. All findings of fact and conclusions of law by the Censor Board are made final and are subject to review only for illegality or want of jurisdiction.

As a first cause of action the complaint alleges that plaintiff has been denied the rights of free speech, press and communication guaranteed by the First and Fourteenth Amendments and has been denied property rights contrary to the due process clause of the Fourteenth Amendment. The ordinances are on their face unconstitutional, plaintiff alleges, because they provide for a system of prior censorship, establish improper standards for censorship, and are too vague and indefinite. Alternatively, plaintiff alleges that the action of the Censor Board here is unconstitutional because this motion picture contains nothing which can constitutionally be proscribed.

Jurisdiction for this first cause of action is grounded on Title 28, Sec. 1331, U.S.C.A., which creates federal question jurisdiction.

Jurisdiction for the second cause of action appears to be grounded both on diversity of citizenship (Title 28, Sec. 1332, U.S.C.A.) and on the existence of a federal question, for here the complaint adopts the allegations contained in the first cause of action, and it seems to make the further allegation that this motion picture is not obscene even within the meaning of the ordinances themselves. To the extent that in this second cause of action plaintiff relies on federal question jurisdiction, it adds nothing to the first cause of action. To the extent that it makes the further allegation that the film is not obscene within the meaning of the ordinances themselves, it relies on diversity jurisdiction.

Plaintiff, by amendment, asserts a third cause of action, merely adopting the allegations of the first, but relying on Title 42, Sec. 1983, U.S.C.A., and, for jurisdiction, on Title 28, Sec. 1343, U.S.C.A. Both of these are "Civil Rights" statutes. This amendment apparently was filed to obviate the necessity of showing that the jurisdictional amount is involved, Sec. 1343 not requiring that this amount be involved.

Plaintiff alleges that it is without remedy in the state courts and unless the relief sought is granted, it will suffer irreparable harm and damage.

Plaintiff prays for a declaration that the motion picture is not obscene, that the charter provisions and ordinances are on their face unconstitutional, and that the action of the Censor Board here is unconstitutional. It further prays for an injunction restraining the defendants from taking any action, punitive or otherwise, interfering with the public exhibition of the film in Memphis.

At the hearing on the motion to dismiss, plaintiff stipulated that it is not qualified to do business in Tennessee, is not licensed to exhibit films in Memphis, and that it does not have a contract with a Memphis exhibitor to show the motion picture. Accordingly, with this stipulation, and by agreement of the parties, the motion to dismiss is being treated as a motion for summary judgment pursuant to Rule 12(b) of the Civil Rules of Procedure.

■ Defendant first contends, directed only to the first and second causes of action, for which the jurisdictional amount must be present, that the jurisdictional amount of $10,000 is not involved. This amount, however, is alleged to be involved. This Court cannot say

that the allegation is not made in good faith and that to a legal certainty it is not involved. This is the test. 1A Barron and Holtzoff, Federal Practice and Procedure, Sec. 352 at page 343 and cases cited therein.

Defendants next contend that plaintiff has no standing to sue because it is a foreign corporation which has not qualified to do business in Tennessee. They rely on United Artists Corp. v. Board of Censors of City of Memphis, 189 Tenn. 397, 225 S.W.2d 550 (1949). This case held that a foreign corporation could not avail itself of the courts of this state to challenge the action of the Memphis Censor Board in preventing the showing of one of its films because the corporation was "doing business" in Tennessee and had failed to so qualify. Here the complaint does not clearly show and it is not stipulated that plaintiff has been doing business in Tennessee. (The activity in Tennessee that is alleged in the complaint —i. e. that plaintiff sent the film here and sought approval by the Censor Board— might constitute "doing business.")

■ We are of the opinion, however, that plaintiff is not barred from seeking this relief in this court even if it is doing business here. It is true that in a diversity case in federal court, if the action would be barred in the state courts, the federal courts should likewise refuse to entertain it. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); 1A Moore's Federal Practice, Sec. 0.317[6]. However, the rationale of these cases is that the same result should follow in federal court as in state court in a diversity case, relying on Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938) and related cases. This rationale, of course, would not be applicable where plaintiff, as here, is asserting federal rights in federal court, particularly basic constitutional rights. It might be that a foreign corporation, which is not qualified to do business but is doing business, asserting federally created rights should not be so barred even in state courts. In the United Artists case, supra, plaintiff did assert violation of basic federal constitutional rights as a ground for relief, but this point was apparently not argued to the Court as a basis for allowing access to state courts.

■ As stated, the second cause of action, to the extent that it sets up a ground for relief in addition to that stated in the first cause of action, depends for jurisdiction only on diversity of citizenship. If plaintiff has been doing business in Tennessee, this cause of action should, under the authority of the United Artists case, supra, be dismissed. However, as the record does not now clearly reflect whether plaintiff has or has not been doing business in Tennessee, it would not be proper to dismiss it at this time.

■ Next defendants seem to contend that the action of the Censor Board could not constitute a legally cognizable wrong to plaintiff because plaintiff is not itself an exhibitor of films and does not have a contract for the exhibition of the film in Memphis. This contention is answered by the recent decision of the Supreme Court in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L. Ed.2d 584 (1963) in which it held that out-of-state publishers of books suffered such a cognizable wrong when a Rhode Island commission, acting unconstitutionally, pressured local distributors not to sell the books of these publishers.

■ Defendants also seem to contend that there is no justiciable or actual controversy because the ordinances, defendants contend, are directed only against local exhibitors and not against plaintiff, which is not an exhibitor, and therefore that the action of the Censor Board here could be no more than advisory. These ordinances, however, clearly do apply to plaintiff. Under the ordinances the Censor Board has authority to prohibit and has prohibited the exhibition of this film, and under the ordinances plaintiff

would, having a "financial interest" in the exhibition of the film, be subject to punitive action if the film were shown in violation of the Board's ruling.

Defendants seem to make the additional contention that because plaintiff has no contract to exhibit the film, there is no justiciable or actual controversy. More particularly, defendants seem to contend that, without a contract to exhibit the film, this controversy has not reached and could not reach the stage of being "actual" or "justiciable." In answer to this contention we need only quote the classic statement of Chief Justice Hughes in Aetna Life Insurance Company of Hartford, Conn. v. Haworth, 300 U.S. 227, at page 240, 57 S.Ct. 461, at pages 463–464, 81 L.Ed. 617 (1937):

> "A 'controversy' in this sense must be one that is appropriate for judicial determination. [Case cited.] A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. [Case cited.] The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Cases cited.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. [Cases cited.] Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. [Cases cited.]"

■ Defendants next contend that plaintiff is not the real party in interest as is required by Rule 17(a) of the Federal Rules of Civil Procedure. This contention is answered by the holding in Bantam Books, Inc. v. Sullivan, 372 U.S. 58 at page 64, n. 6, 83 S.Ct. 631, at page 636, 9 L.Ed.2d 584 (1963):

> "Furthermore, appellants are not in the position of mere proxies arguing another's constitutional rights. The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication [Case cited.] and the direct and obviously intended result of the Commission's activities was to curtail the circulation in Rhode Island of books published by appellants. Finally, pragmatic considerations argue strongly for the standing of publishers in cases such as the present one. The distributor who is prevented from selling a few titles is not likely to sustain sufficient economic injury to induce him to seek judicial vindication of his rights. The publisher has the greater economic stake, because suppression of a particular book prevents him from recouping his investment in publishing it. Unless he is permitted to sue, infringements of freedom of the press may too often go unremedied. [Case cited.]"

■ Defendants contend that, in any event, this Court could not grant the injunctive relief sought, for to do so would involve enjoining a state criminal prosecution. At the outset it should be pointed out that Title 28, Sec. 2283, U.S.C.A. is not applicable here. This statute prohibits the issuance of an injunction staying proceedings in a state court unless such action is expressly authorized by Congress, or is in aid of our jurisdiction, or is to protect or effectuate our judgments. It is applicable only when the state court proceedings sought to be enjoined have already been instituted. 1A Moore's Federal Practice, Sec. 0.229[1] at page 2636. It is true that an injunction against institution of state court proceedings can be had only if it is shown that irreparable harm would otherwise result. 1A Moore's Federal Practice,

Sec. 0.229[2] at page 2639. Here we have an allegation in the complaint that irreparable harm will result, and there is nothing in this record at this time to the contrary.

As stated, plaintiff amended its complaint by adding a third cause of action. It merely adopted the factual allegations of the first or federal question cause of action and relies on Title 42, Sec. 1983, U.S.C.A. and Title 28, Sec. 1343, U.S. C.A., which may be termed "Civil Rights" statutes. As also stated, this amendment was apparently filed to obviate the necessity of showing that the jurisdictional amount of $10,000 is involved, this amount not being required by Sec. 1343.

Defendants contend that plaintiff cannot travel under these statutory provisions because plaintiff, as a corporation, is not a "citizen" within the meaning of the Constitution and these statutes.

There is unquestionably some uncertainty in this area. See Hague v. Committee for Industrial Organization, 307 U.S. 496, 69 S.Ct. 954, 83 L.Ed. 1423 (1939). This issue, however, need not be resolved at this point. This is true because this Court has already determined in this opinion that the first cause of action will not be dismissed because of lack of jurisdictional amount. If at a later stage in the proceedings it should be determined that the jurisdictional amount is not involved, causing the dismissal of the first cause of action, this Court could then determine whether plaintiff can invoke jurisdiction under Title 28, Sec. 1343, U.S.C.A.

 In their motion to dismiss, defendants do not rely on the doctrine of "abstention." Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In a letter memorandum later furnished to the Court, however, they seem impliedly to do so because they argue that plaintiff has a right of at least limited review in the state courts of the action of the Censor Board. The only significance here of this right of review in the state courts would be as a support for the argument that this Court should abstain and require plaintiff first to seek this state court review. Perhaps the reason defendants did not initially rely on the doctrine of abstention is that to do so is inconsistent with their position that plaintiff, 'as a foreign corporation not qualified to do business in Tennessee, has no standing to seek review either in federal or state courts.

We believe that the doctrine of abstention should not be invoked here for the following reasons:

1. The decision of the Supreme Court of Tennessee in the United Artists case, 189 Tenn. 397, 225 S.W.2d 550 (1949), at least creates serious doubt whether plaintiff could have any review in the state courts.

2. The only review allowed under the ordinances involved here is for illegality and want of jurisdiction, the findings of fact and conclusions of law of the Censor Board being final. In view of this ordinance provision, it is a matter of considerable doubt as to the scope of review that would be allowed in state courts. See Lacey "Judicial Review of Administrative Action in Tennessee—Scope of Review," 23 Tenn.L.Rev. 349 (1954).

3. There is at least a limited exception to the doctrine of abstention where, as here, a challenge is made to local law on the ground that it " * * * impinges on fundamental civil liberties protected by the Fourteenth Amendment." 1A Moore's Federal Practice, Sec. 0.203[1] at page 2110 and cases cited therein.

It results that defendants' motion to dismiss will at this time in all respects be overruled.